122 T.C. No. 18


UNITED STATES TAX COURT



CHARLES A. BOYD AND DARBY A. HARVEY,
f.k.a. DARBY A. BOYD, ET AL.,[1] Petitioners <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 13229-01, 13230-01,    Filed April 27, 2004.
        13231-01, 13232-01,
        13233-01, 13234-01,
        13235-01, 13236-01,
        13237-01, 13238-01.

     Ps are shareholders in C, a trucking company formed pursuant to sec. 1361, I.R.C.  C compensates its drivers at a rate of 25 to 32 cents per mile.  C also provides a per diem allowance of 9 cents per mile.  Ps deducted 80 percent of the per diem allowance paid to the drivers.

_____

   [1]  Cases of the following petitioners are consolidated herewith:  Ralph E. and Lee Ann Bradbury, docket No. 13230-01; Charles E. Harvey, docket No. 13231-01; Deborah G. Harvey, docket No. 13232-01; Mark H. and Jackie Guffin, docket No. 13233-01; Warren D. and Debra W. Garrison, docket No. 13234-01; Mark L. and Jill G. Pryor, docket No. 13235-01; Diane M. Miller, docket No. 13236-01; Edward M. and Bonnie P. Harvey, docket No. 13237-01; and James E. and Lynn B. Willbanks, docket No. 13238-01.

At trial, Ps presented evidence as to the estimated, nonmeal travel expenses incurred by C's drivers. C's drivers testified as to the average amount of their per diem allowance that they spent on items such as lodging, truck parking, showers, laundry, and Federal Express charges.

Held: Despite the presentation of evidence at trial as to the estimated, nonmeal travel expenses incurred by C's drivers, Ps have failed to establish a basis for deducting 80 percent of the per diem allowance paid to the drivers. Beech Trucking Co. v. Commissioner, 118 T.C. 428 (2002), followed.

Held, further, Pursuant to Rev. Proc. 94-77, 1994-2 C.B. 825, Rev. Proc. 96-28, 1996-1 C.B. 686, and Rev. Proc. 96-64, 1996-2 C.B. 427, Ps may only deduct 50 percent of the per diem allowance paid to the drivers.

Held, further, sec. 4.02(5) of Rev. Proc. 94-77, 1994-2 C.B. 825, Rev. Proc. 96-28, 1996-1 C.B. 686, and Rev. Proc. 96-64, 1996-2 C.B. 427, is not invalid.

Held, further, Ps have not substantiated the actual travel expenses incurred by the drivers pursuant to sec. 274(d), I.R.C.

Held, further, the portion of the per diem allowance that Ps estimate is allocated to nonmeal travel expenses may not be deducted in full.

J. Betsy Meacham and Roger D. Rowe, for petitioners.

Caroline R. Krivacka, for respondent.

VASQUEZ, Judge: Respondent disallowed deductions of $836,729[2] for the taxable year ending December 31, 1995; $828,067

---

[2] Unless otherwise indicated, all section references are to
(continued...)

for the taxable year ending December 31, 1996; $198,462 for the taxable year ending March 31, 1997; and $1,048,686 for the taxable year ending December 31, 1997, claimed by Continental Express, Inc. (Continental or the corporation), an S corporation in which petitioners are shareholders. At issue is the amount that petitioners may deduct with respect to per diem allowances Continental provided to its drivers, and, particularly, whether the 50-percent limitation of section 274(n) applies to the total amount of the per diem payments.

### FINDINGS OF FACT

The stipulation of facts, supplemental stipulation of facts, and attached exhibits are incorporated herein by this reference.

### Continental Express, Inc.

Continental is an S corporation within the meaning of section 1361(a)(1). At the time they filed their petitions, all petitioners resided in Arkansas, except Edward and Bonnie Harvey, who resided in Florida, and Deborah Harvey, who resided in Tennessee. Petitioners' yearend ownership percentages as of December 31, 1995, December 31, 1996, and March 31, 1997 were:

| Shareholder | Ownership Percentage |
|---|---|
| Ralph E. Bradbury | 5.00 |
| Warren D. Garrison | 1.25 |

---

2(...continued)
the Internal Revenue Code in effect for the years at issue, all Rule references are to the Tax Court Rules of Practice and Procedure, and all amounts are rounded to the nearest dollar.

| | |
|---|---|
| Bonnie P. Harvey | 5.00 |
| Edward M. Harvey | 86.25 |
| Diane M. Miller | 1.25 |
| James E. Willbanks | 1.25 |

Petitioners' yearend ownership percentages as of December 31, 1997, were:

| Shareholder | Ownership Percentage |
|---|---|
| Darby A. Harvey f.k.a. Darby A. Boyd (Darby Harvey Irrevocable and Intervivos Trust) | .98 |
| Ralph E. Bradbury | 5.00 |
| Mark H. Guffin (Mark Guffin Irrevocable and Intervivos Trust) | .98 |
| Charles E. Harvey (Charles Harvey Irrevocable and Intervivos Trust) | .98 |
| Deborah G. Harvey (Deborah Harvey Irrevocable and Intervivos Trust) | .98 |
| Bonnie P. Harvey | 2.55 |
| Edward M. Harvey | 86.9125 |
| Diane M. Miller | .6375 |
| Jill G. Pryor (Jill Guffin Harvey Irrevocable and Intervivos Trust) | .98 |

Continental is engaged in the long-haul, irregular route trucking business. Continental hauls nonbulk dry goods in trailers from coast to coast in the 48 continental United States. The average length of a haul was 1,750 to 1,850 miles. Continental did not have a dedicated route, and drivers often made triangular runs. That is, drivers often picked up goods in New Jersey and the northeast and delivered the goods to

California and the west coast.  Then they picked up goods on the west coast and delivered them to points such as Arkansas, Texas, or the Midwest.  Eventually, they delivered goods to New Jersey and the east coast, and headed west again.

Continental's Drivers

Continental employed between 277 and 324 drivers during the years in issue.  Drivers were away from home for a minimum of 21 consecutive days per trip and were on the road for an average total of 25 to 28 days per month.  Some drivers were away for 2 to 3 months at a time before returning home.  Drivers accrued 1 day off for every 7 days of driving.

Drivers averaged approximately 322 to 382 miles per day. U.S. Department of Transportation regulations prohibited drivers from traveling more than 550 miles per day.  Additionally, the Department of Transportation regulations required drivers to be off duty for 8 hours for every 8 hours on duty.  The regulations limited drivers to a maximum of 70 hours on duty per week.

With an exception for layovers, Continental drivers earned compensation only when the wheels on the truck were turning. Continental paid its drivers on a per mile arrangement ranging from 25 to 32 cents per mile, depending on experience.  Drivers also received a per diem allowance paid through an accountable plan.  The per diem, paid to drivers in addition to compensation, was intended to reimburse drivers for travel expenses.  The per

diem was 9 cents per mile for single drivers.[3]  Continental's
management believed drivers typically received a per diem
allowance in the low $30 range for 1 day of driving.

Continental's per diem allowance plan was similar to the
majority of per diem allowance plans used by other companies in
the trucking industry.

Continental's Trucks

Continental drivers operated International tractors.  Each
tractor had a cab with a sleeper berth behind the driver's and
passenger's seats.  The engine in a Continental tractor was
located beneath the driver's and passenger's seats.  The size of
the cab, including the sleeper berth, was 96 inches across by 110
inches deep by 60 inches high.

The sleeper berth had no powered air vents.  Ventilation,
heating, and air conditioning were available only through vents
in the dash of the cab and powered by the engine.  The berth had
no running water, no toilet, and very little storage.  One driver
described the sleeper berth as a "rolling jail cell".

The sleeper berth contained a twin size mattress covered in
plastic, but no box spring.  Newer models of Continental's

---

[3]  Single drivers constituted 99 percent of Continental's
drivers.  One percent of the drivers drove in two-person teams.
Each team driver received a per diem allowance of 4.5 cents per
mile.

tractors contained larger sleeper berths, allowing for a 60-inch mattress.

The sleeper berth was designed to provide a driver with room to rest while transporting a load of freight. Drivers' sleep was less restful in the sleeper berth than in a motel. The sleeper berth vibrated and was not quiet because the truck engine remained on while drivers slept so that they had ventilation. Additionally, drivers worried about burglary of their cargo while they slept in the sleeper berth.

Drivers slept in the sleeper berth more often than not. Continental management assumed that drivers slept in the sleeper berth on average 6 of 7 nights per week.

Motel Rentals

Drivers would sleep in a motel while they traveled to prevent fatigue and to maintain safety. While they were traveling, Continental generally did not reimburse drivers for motel rooms.[4] Drivers slept in a motel anywhere from two or three times per month to 3 nights per week. Generally, drivers did not spend more than $30 to $35 for a motel.

---

[4] Pursuant to a corporate layover policy, Continental provided $25 per day in wages and up to $30 reimbursement for a motel if the driver was not moving. For example, if a driver was waiting to unload or load the trailer at its destination due to a backup, the driver would receive layover pay and reimbursement for a motel on the second night the driver was waiting to unload.

Drivers' Other Travel Expenses

In addition to the expense of renting a motel room, drivers also incurred expenses for truck parking, showers, laundry, cleaning supplies for the cab, sheets for the sleeper berth, and Federal Express charges for shipping bills of lading. Drivers also incurred expenses for their meals. Truck parking cost approximately $5 to $10 per night, if free parking could not be obtained. Each shower at a truck stop cost approximately $5 to $6. Laundry cost between $5.50 and $8 per week. Federal Express charges were approximately $8 per week.

Continental drivers were free to spend (or not spend) the per diem in any manner they chose. Drivers generally spent all of the per diem on the travel expenses they incurred while working for Continental. The per diem, however, did not and could not cover all of the expenses drivers incurred, even for a driver who lived frugally and stayed in a motel only 2 or 3 nights per month. The per diem was insufficient to pay for a nightly motel in addition to meals.

Continental's Payroll, Accounting, and Recordkeeping

Continental's accounting and payroll system tracked miles driven, not days worked. In 1994, Continental purchased a new computer system and software designed for the trucking industry at a cost in excess of $400,000. The new system tracked only miles driven, not number of days worked. To track and pay per

diem on a basis other than miles driven would have required a duplicate accounting system.

Between 1995 and 1997, drivers were in short supply. Continental could not abruptly change its compensation system if its drivers would have perceived the change to their detriment, as Continental would lose large numbers of drivers to competing trucking firms. Continental management concluded that in times of short labor supply, changes in a compensation system must occur across the industry, and no single company can change significantly its compensation without an adverse impact on its driver retention.

Continental made a business decision to substantiate deductions for its drivers' per diem allowance using the revenue procedures prescribed by the Internal Revenue Service. Continental did not require drivers to submit receipts or records of their travel expenses, if any, except pursuant to layover and phone call policies. Drivers generally did not submit receipts or other records to the corporation. Indeed, when drivers did submit receipts for travel expenses not related to layover or phone calls, Continental destroyed the receipts or put them back in the driver's trip envelope without consideration.

Continental paid the per diem in lieu of reimbursing actual expenses for meals and incidental expenses incurred by drivers.

Petitioners' Tax Returns

On its Forms 1120S, U.S. Income Tax Return for an S Corporation, for the years at issue, Continental deducted (as part of "Other deductions") driver-related expenses including fuel, tolls, "motels & layover", "per diem", and "hiring cost--drivers". The amounts deducted as per diem payments were $2,231,279 for the taxable year ending December 31, 1995; $2,208,178 for the taxable year ending December 31, 1996; $529,232 for the taxable year ending March 31, 1997; and $2,796,499 for the taxable year ending December 31, 1997. These claimed per diem amounts represent 80 percent of the actual per diem payments made to the drivers. To arrive at the 80-percent claimed deduction, Continental applied the section 274(n) 50-percent limitation to 40 percent of the total per diem amounts paid during the tax years and deducted the remaining 60 percent in full.

## OPINION

Section 274(n) allows a taxpayer to deduct only 50 percent of the amount that otherwise would qualify as an allowable deduction for meals or business entertainment. The issue is whether this 50-percent limitation applies to the full amount of per diem allowances paid with respect to Continental's drivers, as respondent contends. For the reasons discussed below, we agree with respondent.

At the outset, we note the similarities between this case and Beech Trucking Co. v. Commissioner, 118 T.C. 428 (2002).[5] In Beech Trucking Co., the corporation took the same tax position regarding deductibility of the per diem allowance paid to its drivers as petitioners in this case. Five of the six shareholders of Beech Trucking are petitioners in this case.[6] Beech Trucking drivers were dispatched on both long and short hauls. Beech Trucking trucks had sleeper berths. Beech Trucking's long-haul drivers earned between 24 and 26 cents per mile in wages, which included a 6.5 cents per mile per diem allowance. Short-haul drivers earned a flat weekly salary and an additional 6.5 cents per mile per diem. See Beech Trucking Co. v. Commissioner, supra at 430-432. On its Forms 1120S, U.S. Income Tax Return for an S Corporation, for 1995 and 1996, Beech Trucking claimed a deduction that was 80 percent of the actual per diem allowance paid to its drivers. See id. at 432.

In Beech Trucking Co., petitioners argued unsuccessfully

---

[5] The petitioners in Beech Trucking Co. v. Commissioner, 118 T.C. 428 (2002), moved to dismiss their appeal to the Court of Appeals for the Eight Circuit. On Oct. 23, 2002, the Court of Appeals granted the motion to dismiss.

[6] Ed Harvey owned 26.000 percent of Beech Trucking. Ralph Bradbury owned 16.667 percent of Beech Trucking. Diane Miller owned .667 percent of Beech Trucking. James Willbanks owned .667 percent of Beech Trucking. Warren Garrison owned .667 percent of Beech Trucking. Arthur Beech, the only shareholder who is not a shareholder of Continental Express, Inc., owned 55.333 percent of Beech Trucking. See id. at 430.

that Rev. Proc. 94-77, 1994-2 C.B. 825, and Rev. Proc. 96-28, 1996-1 C.B. 686, were invalid "insofar as they operate to characterize the Beech Trucking per diem payments as being solely for meals and incidental expenses (and not for lodging) and to apply the section 274(n) limitation to nonmeal expenses that were covered by the per diem".  Beech Trucking Co. v. Commissioner, supra at 438.

The analysis and reasoning in Beech Trucking Co. apply to this case.  The doctrine of stare decisis is important to this and other Federal courts.  Hesselink v. Commissioner, 97 T.C. 94, 99-100 (1991).  Stare decisis is the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.  Id. at 99.

The key difference between Beech Trucking Co. and this case is that here, petitioners presented evidence at trial as to the estimated, nonmeal travel expenses incurred by Continental's drivers.  In Beech Trucking Co., the taxpayer "offered no independent substantiation of the amounts of lodging or incidental expenses that the Beech Trucking drivers might have incurred, or otherwise established any reasonable basis for allocating the per diem payments to meals, incidentals, and lodging expenses incurred by the drivers."  Beech Trucking Co. v.

<u>Commissioner</u>, <u>supra</u> at 450. Here, Continental's drivers testified as to the average amount of the per diem allowance that they spent on items such as lodging, truck parking, showers, laundry, and Federal Express charges. Despite the presentation of this evidence, we hold that petitioners have failed to establish a basis for deducting 80 percent of the per diem allowance paid to Continental's drivers.

Petitioners in this case have raised arguments regarding the validity of the revenue procedures which we must consider. Furthermore, unlike in <u>Beech Trucking Co.</u>, petitioners in this case, as noted above, attempted to substantiate the drivers' travel expenses. We must consider whether this evidence meets the requirements of section 274(d). Additionally, petitioners here argue that they are entitled to a 100-percent deduction for the portion of the per diem allowance that they estimate is allocable to nonmeal expenses.

I.  <u>Whether Petitioners May Deduct 80 Percent of the Per Diem Allowance Paid to Continental's Drivers</u>

A.  <u>Statutory Framework</u>

Section 162 allows a deduction for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. Section 162 enumerates certain types of deductible expenses, including "a reasonable allowance for salaries or other compensation for personal services actually

rendered", sec. 162(a)(1), and "traveling expenses (including amounts expended for meals and lodging * * *) while away from home in the pursuit of a trade or business", sec. 162(a)(2).

Section 274(d) generally disallows any deduction under section 162 for, among other things, "any traveling expense (including meals and lodging while away from home)", unless the taxpayer complies with stringent substantiation requirements as to the amount, time and place, and business purpose of the expense. Sec. 274(d)(1). Section 274(d) authorizes the Secretary to provide by regulations that some or all of these substantiation requirements "shall not apply in the case of an expense which does not exceed an amount prescribed pursuant to such regulations."

Under section 274(n), the amount allowable as a deduction for "any expense for food or beverages" is generally limited to 50 percent of the amount of the expense that would otherwise be allowable. Sec. 274(n)(1)(A).

B.    The Revenue Procedures

Under the applicable section 274(d) regulations, the Commissioner is authorized to prescribe rules in pronouncements of general applicability under which certain types of expense allowances, including per diem allowances for ordinary and necessary expenses of traveling away from home, will be regarded

as satisfying the substantiation requirements of section 274(d).
Sec. 1.274(d)-1, Income Tax Regs.; see also sec. 1.274-5T(j),
Temporary Income Tax Regs., 50 Fed. Reg. 46032 (Nov. 6, 1985).
For purposes of these regulations, Rev. Proc. 94-77, 1994-2 C.B.
825, Rev. Proc. 96-28, 1996-1 C.B. 686, and Rev. Proc. 96-64,
1996-2 C.B. 427 (hereinafter referred to collectively as the
revenue procedures), authorize various nonmandatory methods that
taxpayers may elect to use, in lieu of substantiating actual
expenses, for deemed substantiation of employee lodging, meal,
and incidental expenses incurred while traveling away from home.[7]
Beech Trucking Co. v. Commissioner, supra at 434.  Under one of
the methods authorized by the revenue procedures, an employee's
expenses for lodging, meal, and incidental expenses while
traveling away from home will be deemed substantiated when "a
payor (the employer, its agent, or a third party) provides a per

---

[7] Rev. Proc. 94-77, 1994-2 C.B. 825, is effective for per diem allowances paid on or after Jan. 1, 1995.  Rev. Proc. 96-28, 1996-1 C.B. 686, superseded Rev. Proc. 94-77, supra, for per diem allowances paid on or after Apr. 1, 1996.  Rev. Proc. 96-64, 1996-2 C.B. 427, superseded Rev. Proc. 96-28, supra, for per diem allowances paid on or after Jan. 1, 1997.  Rev. Proc. 96-64, supra, restates the relevant sections of Rev. Proc. 94-77, supra, and Rev. Proc. 96-28, supra, almost in its entirety.  Subsequent citations to provisions of Rev. Proc. 96-64, supra, will also refer to provisions of superseded Rev. Proc. 94-77, supra, and Rev. Proc. 96-28, supra.  We note that there are some minor differences between Rev. Proc. 96-28, supra, and Rev. Proc. 96-64, supra; however, these differences do not affect the outcome of this case.

diem allowance under a reimbursement or other expense allowance arrangement to pay for such expenses." Rev. Proc. 96-64, sec. 1, 1996-2 C.B. at 427. Section 3.01 of Rev. Proc. 96-64, 1996-2 C.B. at 428 defines a "per diem allowance" as:

a payment under a reimbursement or other expense allowance arrangement that meets the requirements specified in § 1.62-2(c)(1) and that is:

(1) paid with respect to ordinary and necessary business expenses incurred, or which the payor reasonably anticipates will be incurred, by an employee for lodging, meal, and incidental expenses or for meal and incidental expenses for travel away from home in connection with the performance of services as an employee of the employer,

(2) reasonably calculated not to exceed the amount of the expenses or the anticipated expenses, and

(3) paid at or below the applicable Federal per diem rate, a flat rate or stated schedule, or in accordance with any other Service-specified rate or schedule.

Under the revenue procedures, if a per diem allowance includes reimbursement for lodging, in addition to meal and incidental expenses (M&IE), the amount of expenses deemed substantiated each day is the lesser of the per diem allowance for the day or the Federal per diem rate for the locality of travel for the day. Rev. Proc. 96-64, sec. 4.01, 1996-2 C.B. at 428. If the per diem allowance includes reimbursement only for M&IE (and not for lodging), the amount of expenses deemed substantiated each day is the lesser of the per diem allowance

for the day or the Federal M&IE rate.  Rev. Proc. 96-64, sec. 4.02, 1996-2 C.B. at 428-429.  Under special rules for the transportation industry (including the trucking industry), a taxpayer is permitted to treat $36 as the Federal M&IE rate for all localities of travel in the continental United States.[8]  Rev. Proc. 96-64, sec. 4.04(2), 1996-2 C.B. at 429.

A per diem allowance is treated as paid only for M&IE if:

(1) the payor pays the employee for actual expenses for lodging based on receipts submitted to the payor, (2) the payor provides the lodging in kind, (3) the payor pays the actual expenses for lodging directly to the provider of the lodging, (4) the payor does not have a reasonable belief that lodging expenses were or will be incurred by the employee, or (5) <u>the allowance is computed on a basis similar to that used in computing the employee's wages or other compensation</u> (e.g., the number of hours worked, miles traveled, or pieces produced).  [Rev. Proc. 96-64, sec. 4.02, 1996-2 C.B. at 428-429; emphasis added.]

After applying the test in section 4.02 of the revenue procedures to determine whether a per diem allowance is paid only for M&IE or for lodging and M&IE, the revenue procedures contain special rules for applying the section 274(n) 50-percent limitation to per diem allowances.  Section 6.05 of the revenue procedures provides:

<u>Application of the 50-percent limitation on meals and expenses</u>.  When a per diem allowance is paid only for meals and incidental expenses * * * an amount equal to the lesser of the per diem allowance for each calendar day * * * or the Federal M&IE rate for the locality of

---

[8]  Under Rev. Proc. 94-77, sec. 4.04(2), 1994-2 C.B. 825, a taxpayer was permitted to treat $32 as the Federal M&IE rate for all localities of travel in the continental United States.

travel for such day * * * is treated as an expense for food and beverages.  When a per diem allowance is paid for lodging, meal, and incidental expenses, the payor must treat an amount equal to the Federal M&IE rate for the locality of travel for each calendar day * * * the employee is away from home as an expense for food and beverages.  For purposes of the preceding sentence, when a per diem allowance for lodging, meal, and incidental expenses for a full day of travel is paid at a rate that is less than the Federal per diem rate for the locality of travel, the payor may treat an amount equal to 40 percent of such per diem allowance for a full day of travel as the Federal M&IE rate for the locality of travel.

C.    Application of the Revenue Procedures

Petitioners claimed deductions for the per diem payments on the basis of the fourth sentence of section 6.05 of the revenue procedures; i.e., they treated 40 percent of the per diem payments as expenses for food and beverages and thus subject to the section 274(n) 50-percent limitation, and deducted the remaining 60 percent in full (resulting in a claimed deduction of 80 percent of the total per diem payments).

Respondent contends that, after applying the test set forth in section 4.02 of the revenue procedures, petitioners are not entitled to the claimed treatment because under the revenue procedures the per diem payments are treated as being made only for M&IE and not for lodging.  Accordingly, respondent contends, under section 6.05 of the revenue procedures, the per diem payments are treated as being solely for food and beverages and thus fully subject to the 50-percent limitation of section 274(n).  We agree.

It is undisputed that the per diem allowances are computed on the same basis as the drivers' wages; i.e., on the basis of miles driven. Hence, section 4.02 of the revenue procedures treats the per diem allowances as being paid only for M&IE.[9] Beech Trucking Co. v. Commissioner, supra at 437. Under section 4.02 of the revenue procedures, the expenses covered by the per diem allowance are deemed substantiated in an amount equal to the lesser of the per diem allowance for the day or the Federal M&IE rate. See Rev. Proc. 96-64, sec. 4.02, 1996-2 C.B. at 428-429.

Under section 6.05 of the revenue procedures, because the per diem allowances are deemed paid only for M&IE, an amount equal to the lesser of the per diem allowance or the Federal M&IE rate is treated as an expense for food and beverages and thus subject to the limitations of section 274(n). Beech Trucking Co. v. Commissioner, supra at 437. For 1995, the average daily per diem allowance paid by Continental was between $28.85 and $30.72, which is less than the Federal M&IE rate of $32. See Rev. Proc. 94-77, sec. 4.04(2), 1994-2 C.B. at 827. For 1996, the average daily per diem allowance was between $29.73 and $32.19, and the Federal M&IE rate was $32. See id., see also Rev. Proc. 96-28,

---

[9] The test in sec. 4.02 of the revenue procedures is disjunctive. Failure to meet any one of the five enumerated requirements causes the per diem allowances to be considered as paid only for M&IE. Beech Trucking Co. v. Commissioner, supra at 437 n.12. It is undisputed that the requirement described in the text above has been met. We need not decide whether any of the additional requirements have been met. Id.

1996-1 C.B. 688.  For 1997, the average daily per diem allowance was $32.45, which is less than the Federal M&IE rate of $36.  See Rev. Proc. 96-64, 1996-2 C.B. at 429.  Accordingly, under section 6.05 of the revenue procedures, the full amount of the per diem payments is treated as being for food and beverages and thus subject to the 50-percent limitation of section 274(n).[10]  Id.

D.  Petitioners' Contentions

As in Beech Trucking Co., petitioners argue that the revenue procedures are invalid insofar as they operate (in section 4.02) to characterize the per diem payments as being solely for M&IE and (in section 6.05) to apply the section 274(n) limitations to the full amount of the per diem payments.  Petitioners do not argue that the revenue procedures are otherwise invalid; to the contrary, petitioners rely on section 4.01 of the revenue procedures for deemed substantiation of the drivers' travel expenses and on that part of section 6.05 of the revenue procedures that would permit Continental (absent the provision in section 4.02 which deems the per diem payments to be solely for M&IE) to treat 60 percent of the per diem payments as being reimbursements of the drivers' lodging expenses.  In effect,

---

[10]  To the extent that, for 1996, $32.19 was the per diem allowance, only $32 is treated as being for food and beverage and thus subject to the sec. 274(n) limitation.  Petitioners must concede this because they have not otherwise substantiated the amount that is greater than that which is deemed substantiated in the revenue procedures.

petitioners seek to rely selectively on certain aspects of the revenue procedures that work to Continental's benefit while seeking to avoid the associated conditions that the revenue procedures impose.

For the reasons stated in Beech Trucking Co. v. Commissioner, supra at 443-447, we find that section 4.02(5) of the revenue procedures is valid. We reemphasize the point stated in Beech Trucking Co. that the revenue procedures are elective provisions that provide deemed substantiation in lieu of actual substantiation of the drivers' precise travel expenses. The first paragraph of the revenue procedures states: "Use of a method described in this revenue procedure is not mandatory and a taxpayer may use actual allowable expenses if the taxpayer maintains adequate records or other sufficient evidence for proper substantiation." Rev. Proc. 96-64, sec. 1, 1996-2 C.B. at 427.

In Beech Trucking Co. v. Commissioner, supra at 449-450, we stated:

> As pronouncements of general applicability, the Revenue Procedures cannot be expected to mirror perfectly the manifold circumstances of all taxpayers and their traveling employees or of any particular taxpayer's traveling employees. As elective procedures meant to mitigate what might otherwise be onerous substantiation burdens for payors of per diem allowances, the Revenue Procedures accomplish, we believe, at least rough justice. Giving due regard to the highly detailed nature of the statutory and regulatory scheme involved here, to the specialized

experience and information presumably available to the
Commissioner, and to the value of uniformity in
administering the national tax laws, we are unpersuaded
that the complained-of conditions imposed by section
4.02 or section 6.05 of the Revenue Procedures, as
applied in the instant case, are arbitrary or unlawful.
See United States v. Mead Corp., 533 U.S. 218, 234-235
(2000).

In this case, petitioners raised two new arguments
concerning the validity of section 4.02(5) of the revenue
procedures. First, petitioners argue that section 4.02(5)
conflicts with the 50-percent limitation of section 274(n)(1).
Petitioners argue that because the revenue procedures turns "on
the method of payment of the per diem allowance, it imposes the
limitation on deductibility for 'food or beverage' expenses upon
the entirety of the per diem allowance, without regard to the
nature of the expenses actually incurred by the employees."
Respondent argues that there is no conflict between section
4.02(5) of the revenue procedures and section 274(n)(1).
Respondent correctly notes that section 4.02(5) is one of the
tests that determine whether the per diem is paid solely for
meals and incidental expenses. Only after meeting that test is
the section 274(n)(1) 50-percent limitation applied.

We agree with respondent that the per diem is paid "without
regard to the nature or amount of the expense actually incurred
by the employee." Indeed, the drivers testified that they were
free to spend their per diem in any manner they chose. The

testimony established that the vast majority of the per diem was spent on meals and incidental travel expenses such as laundry and showers. Most of the drivers' rest periods were taken in the sleeping berth and not at motels. There is no evidentiary support for petitioners' position that 60 percent of the per diem was spent on lodging.

Second, petitioners argue that, as section 4.02(5) of Rev. Proc. 94-77 was issued on December 27, 1994, Continental did not have a sufficient opportunity to alter its accounting systems to provide for an alternative per diem allowance paid on a basis other than per mile. Continental had recently purchased new computer equipment, and it claimed it would have lost drivers to competing trucking companies if it had altered the per diem method of payment. We have found that Continental made a business decision to pay its drivers a per diem for their travel expenses in lieu of reimbursement for actual expenses incurred. This method correlated with its payment of wages. This method required less recordkeeping. Under this method, Continental did not need to maintain actual receipts for each expense incurred by its drivers. Congress provided that the Secretary may by regulation provide rules for meeting the stringent substantiation requirements of section 274(d). Section 4.02(5) of Rev. Proc. 94-77 is one of those rules.

II.  Whether Petitioners Have Substantiated the Drivers'
     Travel Expenses Pursuant to Section 274(d)

In any event, even if we were to agree with petitioners that the complained-of conditions imposed by the revenue procedures are invalid (which we do not), we would not reach a different result in this case.  In Beech Trucking Co., we noted that "petitioner has not independently substantiated, and thus is entitled to no deduction for, any of the subject expenses in excess of those deemed to be substantiated under the revenue procedures."  Beech Trucking Co. v. Commissioner, supra at 437. We further stated:  "Petitioner has not attempted * * * to substantiate the drivers' travel expenses in any manner that would provide an evidentiary basis for allocating the per diem payments between meal expenses and other reimbursed travel expenses."  Id. at 451-452.  In this case, petitioners' second bite at the apple, petitioners presented the testimony of some of Continental's drivers as to their estimated travel expenses.

Deductions are a matter of legislative grace, and petitioners bear the burden of proving that they are entitled to the deductions claimed.  Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).[11]

---

[11]  The examination in this case began Sept. 24, 1997; therefore, sec. 7491 is inapplicable.  Higbee v. Commissioner, 116 T.C. 438, 440 (2001) (sec. 7491 applies to examinations
(continued...)

Ordinarily, a taxpayer is permitted to deduct the ordinary and necessary expenses that he pays or incurs during the taxable year in carrying on a trade or business. Sec. 162(a). A taxpayer, however, is required to maintain records sufficient to establish the amounts of his deductions. Sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

When a taxpayer establishes that he paid or incurred a deductible expense but does not establish the amount of the deduction, we may estimate the amount allowable in certain circumstances. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). There must be sufficient evidence in the record, however, to permit us to conclude that a deductible expense was paid or incurred in at least the amount allowed. Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).

In addition to satisfying the criteria for deductibility under section 162, certain categories of expenses must also satisfy the strict substantiation requirements of section 274(d) in order for a deduction to be allowed. We may not use the Cohan doctrine to estimate expenses covered by section 274(d). See Sanford v. Commissioner, 50 T.C. 823, 827 (1968), affd. per

---

[11](...continued)
commenced after July 22, 1998).

curiam 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

To substantiate a deduction pursuant to section 274(d), a taxpayer must maintain adequate records or present corroborative evidence to show the following: (1) The amount of the expense; (2) the time and place of use of the listed property; and (3) the business purpose of the use. Sec. 274(d); sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

When a taxpayer's records have been destroyed or lost due to circumstances beyond his control, he is generally allowed to substantiate his deductions through secondary evidence. Malinowski v. Commissioner, 71 T.C. 1120, 1125 (1979); sec. 1.274-5T(c)(5), Temporary Income Tax Regs., 50 Fed. Reg. 46022 (Nov. 6, 1985). A taxpayer in this type of situation may reconstruct his expenses through other credible evidence. Watson v. Commissioner, T.C. Memo. 1988-29; sec. 1.274-5T(c)(5), Temporary Income Tax Regs., supra. If no other documentation is available, we may, although we are not required to do so, accept credible testimony of a taxpayer to substantiate a deduction. Watson v. Commissioner, supra. Having observed the witnesses' appearance and demeanor at trial, we find them to be honest, forthright, and credible.

The drivers who testified at trial provided reasonable estimates of their monthly travel expenses. Beverly James estimated monthly expenses as follows: $52.50 for motels, $12

for showers, $30 for truck parking, $30 for laundry, and $32 for Federal Express charges. These expenses averaged $5.60 per day, using a 28-day month. David Butler estimated monthly expenses as follows: $117 for motels, $50 for showers, $20 for truck parking, $22 for laundry, and $32 for Federal Express charges. These expenses averaged $8.60 per day, using a 28-day month. William Lane estimated monthly expenses as follows: $65 for motels, $60 for showers, $55 for truck parking, $30 for laundry, and $32 for Federal Express charges. These expenses averaged $8.64 per day, using a 28-day month. Mr. Lane estimated his expenses for meals at approximately $24-25 per day.

Despite the credible testimony of the witnesses, we find that petitioners did not substantiate the travel expense deductions of their approximately 300 drivers pursuant to strict standards of section 274(d) and the regulations. Petitioners did not establish the amount, time, or place of each separate expenditure for each of the drivers. Sec. 1.274-5T(b)(2)(i), Temporary Income Tax Regs. Petitioners did not establish the dates of departure and return for each trip away from home by each driver, or the exact number of days away from home. Sec. 1.274-5T(b)(2)(ii), Temporary Income Tax Regs. Petitioners did not establish the exact destination or locality of travel, as described by name of city or town or other similar designation. Sec. 1.274-5T(b)(2)(iii), Temporary Income Tax Regs.

What petitioners did is provide good, reasonable estimates and averages of the expenses that Continental's drivers incurred on the road. While we understand why petitioners made a business decision not to require receipts and records of the drivers' expenses, the regulations under section 274(d) make it clear that estimates and averages are not sufficient to establish travel expenses pursuant to section 274(d). See Sanford v. Commissioner, 50 T.C. at 827 (the Cohan doctrine does not apply to expenses covered by section 274(d)).

Furthermore, we note that were we to find that some of the expenses were ordinary business expenses under section 162, petitioners have failed to substantiate meals and other incidental expenses pursuant to section 274(d). Therefore, petitioners fare better with the deemed substantiation of the revenue procedures than by actual substantiation under sections 162 and 274(d).

III. Whether Petitioners May Deduct More Than 50 Percent of the Nonmeal Travel Expenses Incurred By Drivers

Petitioners argue that "if the Fifth Part of Section 4.02 of Revenue Procedure 94-77 is valid, petitioners are entitled to a downward adjustment in the audit adjustment to Continental's net income for payment of substantial, fully deductible nonmeal travel expenses." Essentially, petitioners seek to deduct an amount of the per diem allowance that is more than 50 percent,

but less than 80 percent, by obtaining a full deduction for the average expenses related to truck parking, showers, motels, laundry and Federal Express, in addition to a 50-percent deduction for the portion of the per diem allocated to meals. Using the testimony of the drivers, petitioners estimate the average daily nonmeal expenses at $7.61 per day per driver, for an additional deduction of $367,836 for 1995, $353,317 for 1996, and $354,527 for 1997.

In support of this argument, petitioners rely on a sentence in Beech Trucking Co. v. Commissioner, supra at 450, which petitioners interpret as an "outline of proof" for success in future cases:

> Having relied exclusively upon the deemed substantiation methods provided in the Revenue Procedures, petitioner has offered no independent substantiation of the amounts of lodging or incidental expenses that the Beech Trucking drivers might have incurred, or otherwise established any reasonable basis for allocating the per diem payments to meals, incidentals, and lodging expenses incurred by the drivers.[30]

_____

[30] In particular, the record does not establish the number of days per trip that the drivers would normally pay for separate lodging or for incidentals such as showers, laundry, local transportation, or overnight parking. As previously noted, it appears that at least some of the trips for which Beech Trucking paid per diem allowances involved no overnight travel.

Petitioners misinterpret our description of the lack of evidence in Beech Trucking Co. as establishing a legal rule for

future cases. The rules regarding deductibility of per diem allowances provide for one of two options: (1) Actual substantiation pursuant to section 274(d); or (2) deemed substantiation pursuant to the revenue procedures. Had petitioners not elected to be under the revenue procedures and had they instead substantiated the nonmeal expenses in compliance with section 274(d), petitioners would have been entitled to a full deduction for those expenses. However, since they elected to opt into the revenue procedures and not to substantiate these expenses as required by section 274(d), they are restricted to the rules under the revenue procedures.

The per diem allowance in this case was deemed to be paid as a "meals only per diem allowance" under the test set forth in section 4.02(5) of the revenue procedures. When a per diem allowance is deemed paid as a "meals only per diem allowance", the revenue procedures provide for a 50-percent deduction of the entire per diem allowance and do not allow for a greater deduction when a taxpayer provides estimates regarding the average nonmeal expenses. Indeed, the purpose of the deemed substantiation under the revenue procedures is to avoid the need for additional evidence and subjective interpretations and to provide taxpayers with clear and objective tests, even if such tests fail to mirror actual expenditures.

We also note that, for the reasons stated in Beech Trucking Co. v. Commissioner, supra at 450-451, petitioners' reliance on

<u>Johnson v. Commissioner</u>, 115 T.C. 210 (2000), in support of their argument that they may use actual substantiation in addition to deemed substantiation, is misplaced.  We reiterate that <u>Johnson</u> deals with section 4.03 of the revenue procedures, which is not at issue in this case.

In reaching all of our holdings herein, we have considered all arguments made by the parties, and to the extent not mentioned above, we find them to be irrelevant or without merit.

To reflect respondent's mathematical error in the statutory notice of deficiency with respect to the adjustments made to Continental for 1996,

<u>Decisions will be entered</u>

<u>under Rule 155</u>.