T.C. Memo. 2020-122

UNITED STATES TAX COURT

FAITH LYNN BRASHEAR AND HENDEL N. THISTLETOP, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13189-13.                    Filed August 19, 2020.

Faith Lynn Brashear and Hendel N. Thistletop, pro sese.

<u>David J. Warner</u> and <u>Emma S. Warner</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CARLUZZO, <u>Chief Special Trial Judge</u>:  In a notice of deficiency dated

March 21, 2013 (notice), respondent determined deficiencies in petitioners'

[*2] Federal income tax, section 6651(a)(1)[1] additions to tax, and section 6662(a) accuracy-related penalties as follows:

| Year | Deficiency | Addition to tax sec. 6651(a)(1) | Penalty sec. 6662(a) |
|------|-----------|------------------|-----------------|
| 2009 | $12,844 | $1,740.75 | $2,568.80 |
| 2010 | 13,796 | 1,353.25 | 2,679.60 |
| 2011 | 6,232 | -0- | 1,246.40 |

After concessions,[2] the issues for decision are whether petitioners: (1) are entitled to various deductions claimed on Schedules C included with their 2009, 2010, and 2011 Federal income tax returns; (2) understated gross receipts by $3,909 on the Schedule C attached to their 2011 Federal income tax return; (3) received but failed to report wages of $4,218 that Mrs. Brashear (petitioner) received from Bank of America National Association (Bank of America) in 2010, as had been reported to respondent on a Form W-2, Wage and Tax Statement, issued by Bank of America; (4) are entitled to a $23,384 deduction for a net

---

[1]Unless otherwise indicated, section references are to the Internal Revenue Code (Code) of 1986, as amended and in effect for the relevant period. Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Respondent concedes that petitioners are entitled to deductions claimed on Schedules C, Profit or Loss From Business, for contract labor expenses of $22,708 and $30,252 for 2009 and 2010, respectively. Petitioners concede that they received and failed to report interest income of $46 from Chase Home Finance, LLC, for 2010.

[*3] operating loss (NOL) carryover from 2008 to 2009; (5) are liable for the above referenced additions to tax; and (6) are liable for section 6662(a) accuracy-related penalties for any year in issue.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. When the petition was filed, petitioners resided in California.

During the years in issue petitioner was self-employed as a real estate broker. The real estate brokerage business operated from a space in petitioners' Corona, California, residence (Corona residence) although petitioners did not reside there at all times during the years in issue. During 2011 petitioner received a $4,875 payment from Taylor Morrison California, LLC, and a $2,444 payment from Themlsonlinecom. Both payments related to her real estate brokerage business and each payment was evidenced on Forms 1099-MISC, Miscellaneous Income. Apparently, only portions of these payments are included in the income reported on petitioners' 2011 Federal income tax return.

According to petitioner, while living in the Corona residence she was involved in a real estate development project in her neighborhood. Petitioner referred to this activity as the Jameson project. The details surrounding the nature of the Jameson project or petitioner's involvement with it are less than clear. This

**[*4]** lack of clarity is consistent with petitioners' evidence offered in support of all of the issues in this case.

In or around 2008 petitioners moved from the Corona residence to a home in the Seattle, Washington, area in order for Mr. Thistletop to obtain medical treatment. According to petitioner, sometime thereafter she began the "Zerolet project", which she described at trial as

> a whole house, waste management system * * *. It's basically a house management system that would convert human waste into, basically, dust by allowing you to turn the process into a gray water system, and the gray water system can be used as a secondary filtration system, in order to [inaudible] and irrigate the surrounding areas without harming the environment.

In addition to her real estate brokerage business, petitioner also worked for Bank of America during the years in issue. The details surrounding her employment with Bank of America are also less than clear. As best we can tell, petitioner's employment with Bank of America ended in early 2010. She earned wages of $4,218 from Bank of America during that year, and those earnings are reflected on a Form W-2 but are not included in the income reported on petitioners' 2010 Federal income tax return.

Petitioners' untimely joint 2009 Federal income tax return was filed on October 3, 2011; their untimely joint 2010 Federal income tax return was

[*5] electronically filed on August 31, 2011; and their 2011 joint Federal income tax return was electronically filed on or before the date it was due. For each year in issue petitioners' Federal income tax return was prepared by a paid income tax return preparer. Each return includes one Schedule C identifying petitioner as the sole proprietor of her real estate brokerage business. The name of that business is shown as "TBD Diversified". The income and deductions attributable to TBD Diversified are shown on the Schedules C as follows:

|  | 2009 | 2010 | 2011 |
|---|---|---|---|
| Income: |  |  |  |
| Gross receipts or sales | $23,608 | $31,752 | $3,410 |
| Gross income | 23,608 | 31,752 | 3,410 |
| Expenses: |  |  |  |
| Advertising | 4,200 | 4,500 | 9,500 |
| Car and truck | -0- | -0- | 9,535 |
| Contract labor | 22,708 | 30,252 | -0- |
| Depreciation and sec. 179 | 1,438 | 589 | 351 |
| Legal and professional services | 5,000 | 5,000 | 5,171 |
| Office expense | 2,800 | 2,300 | 9,938 |
| Rent or lease other business property | 20,200 | 20,292 | -0- |
| Repairs and maintenance | -0- | -0- | 4,644 |
| Supplies | 900 | 1,050 | 4,250 |
| Taxes and licenses | 1,050 | 1,250 | 2,068 |
| Travel | 4,010 | 1,172 | 1,419 |
| Meals and entertainment | 450 | 550 | 2,925 |
| Utilities | 705 | 715 | 5,892 |
| Other expenses | 2,855 | 3,387 | 4,428 |

[*6]

| | | | |
|---|---|---|---|
| Total expenses | 66,316 | 71,057 | 60,121 |
| Net profit (loss) | (42,708) | (39,305) | (56,711) |

As relevant, the 2009 return includes a $23,384 NOL carryover deduction from 2008. The NOL is shown on petitioners' joint 2008 Federal income tax return, filed February 22, 2010.

Petitioners' Schedule C for 2011 included only $3,410 of the $7,319 of income reflected on the Forms 1099-MISC that petitioner received from Taylor Morrison California, LLC, and Themlsonlinecom for 2011.

In the notice respondent: (1) disallowed the Schedule C deductions for contract labor for 2009 and 2010; (2) disallowed the Schedule C deduction for travel for 2009; (3) disallowed the Schedule C deductions for rent or lease of other business property for 2009 and 2010; (4) disallowed the Schedule C deductions for legal and professional services for 2009, 2010, and 2011; (5) disallowed the Schedule C deductions for advertising for 2010 and 2011; (6) disallowed the Schedule C deduction for utilities for 2011; (7) disallowed the Schedule C deduction for meals and entertainment for 2011; (8) disallowed the Schedule C deduction for repairs and maintenance for 2011; (9) disallowed the Schedule C deduction for car and truck expenses for 2011; (10) disallowed a $23,384 NOL carryforward deduction for 2009; (11) determined that petitioners had failed to

**[\*7]** include interest of $46 in income for 2010; (12) determined that petitioners had failed to include taxable wages of $4,218 that petitioner had received from Bank of America in 2010; (13) increased petitioners' Schedule C gross receipts by $3,909 for 2011; (14) determined that petitioners were liable for additions to tax under section 6651(a)(1) for 2009 and 2010; and (15) imposed a section 6662(a) accuracy-related penalty for each year in issue. Other adjustments made in the notice are computational and need not be addressed.

OPINION

As a general rule, the Commissioner's determination of a taxpayer's Federal income tax liability in a notice of deficiency is presumed correct, and the taxpayer bears the burden of proving that the determination is erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).[3]

I. Schedule C Deductions

As we have observed in countless opinions, deductions are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any claimed deduction. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). This

---

[3]Petitioners do not claim and the record does not otherwise demonstrate that the provisions of sec. 7491(a) need be applied here, and we proceed as though they do not.

**[*8]** burden requires the taxpayer to substantiate expenses underlying deductions claimed by keeping and producing adequate records that enable the Commissioner to determine the taxpayer's correct tax liability.  Sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976); Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965).  A taxpayer claiming a deduction on a Federal income tax return must demonstrate that the deduction is allowable pursuant to some statutory provision and must further substantiate that the expense to which the deduction relates has been paid or incurred.  See sec. 6001; Hradesky v. Commissioner, 65 T.C. at 89-90; sec. 1.6001-1(a), Income Tax Regs.

Taxpayers may deduct ordinary and necessary expenses paid in connection with operating a trade or business.  Sec. 162(a); Boyd v. Commissioner, 122 T.C. 305, 313 (2004).  To be ordinary the expense must be of a common or frequent occurrence in the type of business involved.  Deputy v. du Pont, 308 U.S. 488, 495 (1940).  To be necessary an expense must be appropriate and helpful to the taxpayer's business.  Welch v. Helvering, 290 U.S. at 113.  On the other hand section 262(a) generally disallows any deduction for personal, living, or family expenses.  Whether an expenditure satisfies the requirements for deductibility

[*9] under section 162 is a question of fact.  See Commissioner v. Heininger, 320 U.S. 467, 475 (1943).

Deductions for expenses attributable to travel ("including meals and lodging while away from home"), entertainment, gifts, and the use of "listed property" (as defined in section 280F(d)(4) and including passenger automobiles), if otherwise allowable, are subject to strict rules of substantiation.  See sec. 274(d); Sanford v. Commissioner, 50 T.C. 823, 827 (1968), aff'd per curiam, 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

With these fundamental principles of Federal income taxation in mind, we consider petitioners' claims to the various deductions in dispute.

Petitioners claimed deductions for various expenses on each Schedule C for 2009, 2010, and 2011.  Oddly enough, according to petitioners the disallowed deductions are not attributable to TBD Diversified, petitioner's real estate brokerage business, but to either the Jameson or the Zerolet project.

As noted above, taxpayers may deduct ordinary and necessary expenses paid in connection with operating a trade or business.  Sec. 162(a); Boyd v. Commissioner, 122 T.C. at 313.  In considering whether a taxpayer's activity constitutes a trade or business within the meaning of section 162(a), we examine

[*10] not only the taxpayer's profit motive but also whether the business was conducted with continuity and regularity and as a means of earning a living.  See Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987).

Neither petitioner's testimony nor any other evidence included in the record related to the Jameson and Zerolet projects would allow for a finding that either project constituted a "trade or business" within the meaning of section 162 during any of the years in issue.  Petitioner's vague, undisciplined, and sometimes contradictory testimony attempting to describe these projects makes us wonder whether either project actually existed beyond her own intentions.  Even if either did, petitioners have failed to substantiate the amounts claimed or establish that the disallowed deductions relate to ordinary and necessary expenses of either project.  Accordingly, other than those respondent conceded,[4] respondent's disallowances of those deductions are sustained.

## II.  Net Operating Loss

Generally, an NOL is the excess of allowable deductions over gross income for a given tax year.  See sec. 172(c).  An NOL generally must first be carried back 2 years and then carried forward 20 years.  Sec. 172(b)(1)(A).  A taxpayer who

---

[4]Respondent's concessions relate to amounts petitioner paid to a real estate agent who provided services in connection with petitioner's real estate brokerage business.

**[\*11]** makes an election can waive the carryback requirement and carry forward the NOL directly. Sec. 172(b)(3). An election to waive the carryback must be made on a timely filed tax return for the year of the NOL for which the election is to be in effect. Id.; see Moretti v. Commissioner, 77 F.3d 637, 647 (2d Cir. 1996). Petitioners made a proper election.

The NOL must be consumed in the earliest year for which there is income available to be offset by the loss. See sec. 172(b)(2). Any excess NOL that is not consumed in one year is carried to the next earliest year. Id. A taxpayer claiming an NOL must file with his return "a concise statement setting forth the amount of the net operating loss deduction claimed and all material and pertinent facts relative thereto, including a detailed schedule showing the computation of the net operating loss deduction." Sec. 1.172-1(c), Income Tax Regs.

On their 2009 Federal income tax return petitioners reported a $23,384 NOL carryover deduction from 2008. Petitioners did not provide any testimony about the source of the NOL, nor did they provide evidence to substantiate their claimed NOL from 2008. Although petitioners provided their 2008 Federal income tax return, which reports the claimed NOL, the return alone cannot substantiate the NOL. See Wilkinson v. Commissioner, 71 T.C. 633, 639 (1979) (explaining that a tax return is merely a statement of claim and does not establish truth of matters

[*12] stated therein). It follows that petitioners are not entitled to the net operating loss carryover deduction here in dispute, and we so hold.

III. Unreported Income

Section 61(a) provides that "gross income means all income from whatever source derived". Respondent determined that petitioners failed to report items of income (wages of $4,218 from Bank of America for 2010 and Schedule C gross receipts of $3,909 for 2011) as evidenced and reported to respondent on Form W-2 or Forms 1099-MISC issued by various payors. The amounts shown on these information returns clearly constitute income, and nothing else need be said on the point.

Section 6201(d) provides that the Commissioner in certain circumstances cannot rely on information returns alone to establish unreported income but "shall have the burden of producing reasonable and probative information" in addition thereto. This provision applies only where the taxpayer "asserts a reasonable dispute with respect to any item of income reported on an information return" and only if "the taxpayer has fully cooperated with the Secretary". Id.

There is no indication that petitioners cooperated with respondent at any stage of this case. Petitioner initially testified that her employment with Bank of America ended before 2010 but later conceded that she did work for Bank of

**[\*13]** America during 2010, which is consistent with petitioners' other evidence showing wages from Bank of America deposited into petitioners' bank account. Otherwise, petitioners offered no testimony or other evidence suggesting that they did not receive the items of income in question. Respondent's adjustments regarding the omitted items of income are sustained.

IV. Additions to Tax

Petitioners' 2009 return was due to be filed on or before April 15, 2010, but it was not filed until October 3, 2011. See secs. 6072(a), 7503. Petitioners' 2010 return was due to be filed on or before April 15, 2011, but it was not filed until August 31, 2011. See secs. 6072(a), 7503. Consequently, respondent imposed a section 6651(a)(1) addition to tax for each year.

Section 6651(a)(1) authorizes the imposition of an addition to tax for failure to file a timely return unless the taxpayer proves that such failure is due to reasonable cause and is not due to willful neglect. See also United States v. Boyle, 469 U.S. 241, 245 (1985); Harris v. Commissioner, T.C. Memo. 1998-332. Section 6651(a)(1) imposes an addition to tax of 5% of the tax required to be shown on the return for each month or fraction thereof for which there is a failure to file, not to exceed 25% in the aggregate.

**[\*14]** Respondent's records demonstrate that petitioners' returns were not timely filed, and petitioners do not dispute the point. Respondent's section 7491(c) burden of production has been met with respect to the imposition of the section 6651(a)(1) additions to tax.

To avoid liability for the additions to tax, petitioners would have to show that each failure to timely file (1) did not result from willful neglect and (2) was due to reasonable cause. See Boyle, 469 U.S. at 245-246; Crocker v. Commissioner, 92 T.C. 899, 912-913 (1989); sec. 301.6651-1(c)(1), Proced. & Admin. Regs. Willful neglect has been defined as a "conscious, intentional failure or reckless indifference." Boyle, 469 U.S. at 245. Reasonable cause exists where the taxpayer exercised ordinary business care and prudence but was nevertheless unable to file the return by the date prescribed by law. Id. at 246. The existence of reasonable cause or willful neglect is a question of fact. Id. at 249 n.8.

Petitioners explain that they filed their returns late because they regarded the filing deadlines as essentially irrelevant since they did not expect to owe tax for either year. Petitioners did not cite, nor are we aware of, any authority that would allow a taxpayer to avoid section 6651(a)(1) liability on such a basis. See sec. 301.6651-1(c), Proced. & Admin. Regs.

[*15] Petitioners also claim that their failures to timely file were due to "extreme circumstances", although they did not elaborate on the nature of those circumstances. We suspect but are not sure, given the confusing nature of petitioner's testimony, that the circumstances relate to Mr. Thistletop's medical condition during the relevant period.

The Court has found reasonable cause for failure to timely file a return where the taxpayer or a member of the taxpayer's family experiences an illness or incapacity that prevents the taxpayer from filing a tax return. See, e.g., Tabbi v. Commissioner, T.C. Memo. 1995-463. In contrast the Court has not found reasonable cause where the taxpayer does not timely file but is able to continue to conduct his or her business affairs despite the illness or incapacity. See, e.g., Ruggeri v. Commissioner, T.C. Memo. 2008-300, slip op. at 7-8 (and cases cited threat).

While we are sympathetic to petitioners' difficulties, we are not persuaded that the challenges they faced satisfy the reasonable cause requirement of section 6651(a)(1). To the contrary, and despite those challenges, petitioner was able to engage in her real estate brokerage business during the relevant period. Consequently, we conclude that petitioners did not exercise ordinary business care and prudence and that they have not established reasonable cause for failing to file

**[\*16]** their 2009 and 2010 tax returns timely. They are therefore liable for the additions to tax imposed by section 6651(a)(1) as respondent determined in the notice.

## V. Accuracy-Related Penalties

Lastly, we consider whether petitioners are liable for a section 6662(a) accuracy-related penalty for any of the three years in issue. As relevant here, section 6662(a) imposes a penalty of 20% of the portion of an underpayment of tax attributable to the taxpayer's: (1) negligence or disregard of rules or regulations or (2) substantial understatement of income tax. Sec. 6662(a) and (b)(1) and (2). "Negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Code, including any failure to keep adequate books and records or to substantiate items properly. See sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. A "substantial understatement of income tax" is any understatement of income tax that exceeds the greater of 10% of the tax required to be shown on the return or $5,000. See sec. 6662(d)(1)(A); sec. 1.6662-4(b), Income Tax Regs. Respondent bears the burden of production with respect to the imposition of the section 6662(a) accuracy-related penalties. See sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).

[*17] Section 6751(b)(1) provides that, subject to certain exceptions in section 6751(b)(2), no penalty shall be assessed unless the initial determination of the assessment is personally approved in writing by the immediate supervisor of the individual making the determination or such higher level official as the Secretary may designate. Written approval of the initial penalty determination under section 6751(b)(1) must be obtained before the date when the taxpayer is first sent written notification of the penalties proposed. Clay v. Commissioner, 152 T.C. 223, 249 (2019); see also Chai v. Commissioner, 851 F.3d 190, 221 (2d Cir. 2017), aff'g in part, rev'g in part T.C. Memo. 2015-42. Compliance with section 6751(b)(1) is part of the Commissioner's burden of production in any deficiency case in which a penalty subject to section 6751(b)(1) is asserted. Chai v. Commissioner, 851 F.3d at 221.

The section 6662(a) accuracy-related penalties determined in the notice were properly approved as required by section 6751(b)(1). The record includes a Civil Penalty Approval Form approving imposition of accuracy-related penalties against petitioners for the years in issue and executed by the IRS tax examiner's immediate supervisor at the appropriate time. Respondent has proven sufficient facts to satisfy the burden of production as to that requirement.

[*18] Petitioners failed to maintain adequate substantiating records for expenses underlying the deductions claimed on their 2009, 2010, and 2011 returns. Therefore, respondent has met his burden of production with respect to the imposition of section 6662(a) accuracy-related penalties.

The accuracy-related penalty does not apply to any part of an underpayment of tax if it is shown that the taxpayer acted with reasonable cause and in good faith with respect to that portion. Sec. 6664(c)(1). The determination of whether a taxpayer acted in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. Petitioners bear the burden of proving that they had reasonable cause and acted in good faith with respect to the underpayments. See Higbee v. Commissioner, 116 T.C. at 449.

Reliance on professional advice will absolve the taxpayer if "such reliance was reasonable and the taxpayer acted in good faith." Sec. 1.6664-4(b)(1), Income Tax Regs. Under certain circumstances, a taxpayer's reliance upon professional advice may establish the taxpayer's "reasonable cause" and "good faith" with respect to an underpayment of tax if the taxpayer establishes that: (1) the professional was provided with complete and accurate information, (2) an incorrect return was a result of the preparer's mistakes, and (3) the taxpayer

**[*19]** demonstrates good-faith reliance on a competent professional.  See Estate of Goldman v. Commissioner, 112 T.C. 317, 324 (1999), aff'd without published opinion sub nom. Schutter v. Commissioner, 242 F.3d 390 (10th Cir. 2000); see also Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002).

Although their returns were prepared by a paid income tax return preparer, petitioners have not established that they provided the return preparer with source documents underlying the deductions and thus they have failed to establish that their reliance upon the return preparer constitutes "reasonable cause" and "good faith" with respect to the underpayments of tax.  Moreover, petitioners failed to substantiate their Schedule C deductions, or provide any explanation for their omission of the unreported income determined in the notice.  Accordingly, respondent's imposition of section 6662(a) accuracy-related penalties for the years in issue is sustained.

To reflect the foregoing,

Decision will be entered under

Rule 155.