T.C. Summary Opinion 2007-183


UNITED STATES TAX COURT


MCLU BUAH, Petitioner $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

PETER BUAH, Petitioner $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 10639-05S, 10640-05S.    Filed October 25, 2007.


McLu Buah, pro se in docket No. 10639-05S.

Peter Buah, pro se in docket No. 10640-05S.

<u>Cleve Lisecki</u>, for respondent.

PANUTHOS, <u>Chief Special Trial Judge</u>:[1]  These consolidated

cases were heard pursuant to the provisions of section 7463[2] of

the Internal Revenue Code in effect when the petitions were

filed.  Pursuant to section 7463(b), the decisions to be entered

are not reviewable by any other court, and this opinion shall not

be treated as precedent for any other case.

In a notice of deficiency, respondent determined

deficiencies in petitioner Peter Buah's (Mr. Buah) 2002 and 2003

Federal income taxes of $2,284 and $817, respectively.  The issue

for decision is whether Mr. Buah is entitled to deductions

claimed on Schedule A, Itemized Deductions, in amounts greater

than that allowed by respondent for the years in issue.

In a separate notice of deficiency, respondent determined

deficiencies in petitioner McLu Buah's (Mrs. Buah) 2002 and 2003

Federal income taxes of $4,044 and $2,547, respectively.  The

---

[1] After the death of Special Trial Judge Carleton D. Powell on Aug. 23, 2007, the parties were directed to file, on or before Oct. 2, 2007, a response consenting to the reassignment of these cases or file a notice objecting to the reassignment together with a motion for a new trial or a motion to supplement the record, stating reasons in support of either motion.  On Sept. 13, 2007, counsel for respondent filed a response in each case consenting to the reassignment of these cases; however, no responses were filed by petitioners.  After allowing ample time for responses to be filed by petitioners, the Chief Judge reassigned these cases to Chief Special Trial Judge Peter J. Panuthos, for disposition on the existing records.

[2] Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

issues for decision are whether Mrs. Buah is entitled to an earned income credit, whether she qualifies as a head of household, and whether she is entitled to a standard deduction for the years in issue.

## Background

Some of the facts have been stipulated and are so found. The stipulations of facts and the attached exhibits, as well as additional exhibits introduced at trial, are incorporated herein by this reference.

Petitioners resided in Woodbridge, Virginia, when the petitions were filed. Petitioners were married sometime before 2002 and remained married at the time of trial. They have two children, DB and GB.[3]

During part or all of the years at issue, Mr. Buah worked for Landmark Honda as a salesman and for National Delivery Service as a newspaper deliveryman. Mrs. Buah worked as a hairdresser. Petitioners purchased a house together in June 2003. On a loan application dated June 13, 2003, petitioners indicated they had been living together for the past 3 years.

Although petitioners had previously filed joint Federal income tax returns, they filed separate returns for 2002 and 2003. On his 2002 return, Mr. Buah claimed itemized deductions

---

[3] Because it appears the children are minors, the Court uses only their initials.

of $28,954.  Respondent disallowed $17,706 of that amount,
consisting of medical and dental expenses, cash and noncash
contributions, and unreimbursed employee business expenses.  In
2003, Mr. Buah claimed itemized deductions of $27,182.
Respondent disallowed $5,406 of that amount, consisting of cash
contributions and unreimbursed employee business expenses.

Mrs. Buah filed her 2002 and 2003 tax returns as "head of
household" and claimed an earned income credit and a standard
deduction for each year.  In the notice of deficiency, respondent
changed Mrs. Buah's filing status to married filing separately
and disallowed the earned income credit and standard deduction
for each year.[4]

Petitioners each filed a timely petition for review with the
Court.  Mr. Buah's case was assigned docket No. 10640-05S.  Mrs.
Buah's case was assigned docket No. 10639-05S.  By Order of the
Court dated October 31, 2005, we consolidated the cases for
trial, briefing, and opinion.

## Discussion

In general, the Commissioner's determinations set forth in a
notice of deficiency are presumed correct, and the taxpayer bears

---

[4] Respondent also increased Mrs. Buah's child tax credit
from zero to $498 in 2002 and from zero to $633 in 2003 but
reduced the additional child tax credit from $350 to zero in 2002
and from $189 to zero in 2003.  Mrs. Buah has not disputed these
adjustments, and therefore we do not address them further.  See
Barnes v. Commissioner, T.C. Memo. 2007-141 n.2.

the burden of showing that the determinations are in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Deductions and credits are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any deduction or credit claimed on a return. See INDOPCO, Inc. v. Commissioner, 503 U.S. 79 (1992); Wilson v. Commissioner, T.C. Memo. 2001-139. We are not required to accept a taxpayer's unsubstantiated testimony that he is entitled to a deduction or credit. See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); Hoang v. Commissioner, T.C. Memo. 2006-47.

Pursuant to section 7491(a), the burden of proof as to factual matters shifts to the Commissioner under certain circumstances. Petitioners have neither alleged that section 7491(a) applies nor established their compliance with the requirements of section 7491(a)(2)(A) and (B) to substantiate items, maintain records, and cooperate fully with respondent's reasonable requests. Petitioners therefore bear the burden of proof.

I. Mr. Buah--Docket No. 10640-05S

A. Medical and Dental Expenses

Under section 213(a), medical and dental expenses paid and not compensated for by insurance or otherwise are deductible to the extent they exceed 7.5 percent of adjusted gross income (AGI).

Before applying the 7.5-percent AGI limitation, Mr. Buah reported $14,520 of medical and dental expenses in 2002. Respondent allowed $3,982 of that amount and disallowed the remainder. Copies of medical bills and related documents indicate that the value of medical services received in 2002 greatly exceeded $3,982. However, Mr. Buah acknowledges that insurance paid a portion of the medical expenses. For example, one document indicates that insurance paid $2,242 of the cost of medical services performed in June 2002 while Mr. Buah was responsible only for the remaining $502. Mr. Buah has not demonstrated that the expenses not compensated for by insurance exceed the amount that respondent allowed. Accordingly, respondent's determination on this issue is sustained.[5]

B. Contributions

In general, section 170(a) allows as a deduction any charitable contribution made within the taxable year. Mr. Buah claimed a deduction for cash and noncash contributions of $5,100 in 2002 and $4,665 in 2003. Respondent disallowed $3,618 for 2002 and $2,100 for 2003. The only corroborating evidence that Mr. Buah introduced are statements from Love International Church indicating he made contributions of $544 in 2002 and $1,565 in

---

[5] Since we have sustained respondent's determination on this issue, we need not address whether Mr. Buah can claim deductions for medical expenses of his wife and children given that petitioners filed separate returns and Mrs. Buah claimed the children as dependents.

2003. Because the amounts shown on the statements do not exceed the amounts that respondent allowed, respondent's determinations on this issue are sustained.

C. Unreimbursed Employee Business Expenses

In general, a taxpayer may deduct ordinary and necessary expenses paid or incurred in connection with the operation of a trade or business. Sec. 162(a); Boyd v. Commissioner, 122 T.C. 305, 313 (2004). A trade or business includes the trade or business of being an employee. O'Malley v. Commissioner, 91 T.C. 352, 363-364 (1988). For such expenses to be deductible, the taxpayer must not have the right to obtain reimbursement from his employer. See Orvis v. Commissioner, 788 F.2d 1406, 1408 (9th Cir. 1986), affg. T.C. Memo. 1984-533.

Mr. Buah claimed a $9,400 deduction in 2002 and a $11,150 deduction in 2003. Respondent disallowed $3,550 for 2002 and $3,306 for 2003. The claimed deductions appear to consist primarily of mileage expenses that Mr. Buah contends he incurred delivering newspapers for National Delivery Service.

Mr. Buah's testimony on this issue was vague and confusing. It is not clear whether National Delivery Service reimbursed Mr. Buah for his expenses. Nor is it clear whether Mr. Buah reported the income he received from National Delivery Service. For example, on his 2002 return Mr. Buah reported total wages of $29,826. Except for a tax refund, he reported no other sources

of income in 2002. A payroll statement from Mr. Buah's other employer, Landmark Honda, indicates he earned $28,686 in 2002. The difference between the wages reported on the return and the amount received from Landmark Honda is $1,140. Mr. Buah did not explain why he would incur $9,400 of mileage expense for a job that paid him only $1,140.

We also note that passenger automobiles are "listed property" under section 280F(d)(4)(A)(i). Thus, the claimed mileage expenses are subject to the heightened substantiation requirements of section 274(d). See Romer v. Commissioner, T.C. Memo. 2001-168. Mr. Buah must substantiate by adequate records or by sufficient evidence corroborating his own testimony the amount of the expense, the time and place of the use, and the business purpose of the use. Sec. 274(d); sec. 1.274-5T(b), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

Although Mr. Buah introduced mileage logs, their reliability is suspect. It is unclear when the logs were made, and several entries have been whited out and replaced with other numbers. Mr. Buah introduced a notarized statement that is somewhat difficult to read, but which appears to state that Mr. Buah "do (510) five hundred & ten miles weekly for his routing schedule. That is, 85 miles per day. Thanks." The statement is not on National Delivery Service letterhead, the signature is illegible, and there is no contact information listed. We do not find this

statement to be credible evidence that Mr. Buah incurred the mileage expenses he claimed. Respondent's determinations on this issue are sustained.

II. Mrs. Buah--Docket No. 10639-05S

A. Earned Income Credit

Section 32(a) generally provides eligible individuals with an earned income credit against their income tax liability. An "eligible individual" is defined as any individual who has a "qualifying child". Sec. 32(c)(1)(A)(i). A qualifying child includes a son or daughter of the taxpayer, sec. 32(c)(3)(B)(i)(I), who has the "same principal place of abode as the taxpayer for more than one-half of such taxable year", sec. 32(c)(3)(A)(ii).

Section 32(d) provides, however, that "In the case of an individual who is married (within the meaning of section 7703), this section shall apply only if a joint return is filed for the taxable year under section 6013." An individual legally separated from his spouse under a decree of divorce or separate maintenance shall not be considered as married. Sec. 7703(a)(2). In addition, section 7703(b) provides that an individual who is married shall not be considered as married if four requirements are satisfied: (1) The individual files separately; (2) the individual maintains as his home a household which constitutes for more than one-half of the taxable year the principal place of

abode of a child who is the tax dependent of such individual; (3) the individual furnishes over one-half the cost of maintaining such household during the taxable year; and (4) for the last 6 months of the taxable year, the individual's spouse is not a member of such household.

Petitioners did not file a joint return for either year and were not legally separated under a decree of divorce or separate maintenance. Petitioners assert, however, that they were living apart and that the children lived with Mrs. Buah, thereby satisfying the requirements of section 7703(b). Respondent contends that petitioners lived together during the years at issue. In the alternative, respondent asserts that even if petitioners lived apart and Mrs. Buah maintained a household that was the children's principal place of abode, Mrs. Buah did not furnish over one-half of the cost of maintaining the household.

Petitioners testified they lived apart in 2002 and 2003 and had separate mailing addresses. As we indicated at trial, however, we do not find petitioners' testimony on this issue to be credible. Petitioners failed to explain why they would purchase a home together if they were separated. The signed loan application, which indicates that petitioners were in fact living together, further undercuts petitioners' position. In addition, Mr. Buah conceded that although petitioners had separate mailing

addresses, Mrs. Buah had bank statements and other correspondence sent to Mr. Buah's Post Office box.

Petitioners also testified that, during the time they purportedly were living apart, Mrs. Buah lived with a friend and Mr. Buah lived at another location. Petitioners did not call either person as a witness. We infer that such testimony would not have been favorable to petitioners. See <u>Wichita Terminal Elevator Co. v. Commissioner</u>, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947); <u>Arnold v. Commissioner</u>, T.C. Memo. 2007-168.

Petitioners have failed to prove that Mr. Buah was not a member of Mrs. Buah's household for the last 6 months of 2002 or 2003. Accordingly, Mrs. Buah is not entitled to the earned income credit for the years in issue. We need not address respondent's alternative position that Mrs. Buah did not furnish over one-half of the cost of maintaining the household.

B. <u>Head of Household Filing Status</u>

Section 1(b) imposes a special income tax rate on a taxpayer filing as head of household. To qualify as a head of a household, a taxpayer must be unmarried at the end of the taxable year. Sec. 2(b)(1). As is relevant here, a taxpayer's marital status is determined under section 7703(b). See sec. 2(c). For the reasons discussed above, we find that Mrs. Buah was married at the end of the years in issue. Therefore, she is not entitled

to head of household filing status.  Respondent's determinations on this issue are sustained.

C.  Standard Deduction

Mrs. Buah claimed a standard deduction for each year which respondent disallowed because Mr. Buah claimed itemized deductions.  If married individuals file separately and one spouse itemizes deductions, then the other spouse is not entitled to the standard deduction.  See sec. 63(c)(6)(A); Cotton v. Commissioner, T.C. Memo. 2000-333.  Respondent's determinations on this issue are sustained.

To reflect the foregoing,

Decisions will be entered

for respondent.