T.C. Memo. 2015-9

UNITED STATES TAX COURT

EDGAR FLORES, SR., AND JULIA FLORES, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16863-13.                    Filed January 12, 2015.

Edgar Flores, Sr., and Julia Flores, pro sese.

<u>Matthew M. Johnson</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KERRIGAN, <u>Judge</u>:  Respondent determined a deficiency of $7,383 and an accuracy-related penalty of $1,477 with respect to petitioners' Federal income tax for tax year 2011.

**[\*2]** Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

After concessions, the issues for consideration are (1) whether petitioners are entitled to a deduction for the rental real estate loss they reported on their Schedule E, Supplemental Income and Loss; (2) whether petitioners are entitled to a deduction for the unreimbursed employee business expenses they reported on their Schedule A, Itemized Deductions; (3) whether petitioners are entitled to a deduction for the charitable contributions by cash or check they reported on their Schedule A; and (4) whether petitioners are liable for the accuracy-related penalty under section 6662(a).[1]

FINDINGS OF FACT

Some of the facts are stipulated and are so found. Petitioners resided in Illinois when they filed the petition.

---

[1]The parties agree that petitioners had total gambling winnings of $19,238, total gambling losses of $14,060, and total net gambling income of $4,998 for tax year 2011. Respondent concedes that petitioners are entitled to deduct $848 for union and professional dues as an unreimbursed employee business expense subject to the 2% miscellaneous itemized deduction limitation.

[*3]  During 2011 petitioners owned a townhouse residence (property) in Illinois. The property is 17.4 miles from petitioners' primary residence.  Petitioners rented out the property or held the property out for rent throughout 2011.  The property was the only rental real estate that petitioners owned in 2011.  Petitioner husband managed, renovated, and repaired the property during 2011.  He performed all of the work himself.

During 2011 petitioner wife worked full time, at least 1,800 hours, for Chicago Nut & Bolt Co., Inc., a manufacturer of industrial and intricate custom fasteners whose business does not include the development, redevelopment, construction, reconstruction, acquisition, conversion, rental, operation, management, leasing, or brokerage of real property.  Petitioner wife was also the treasurer of the Bill George Youth Football League (BGYFL) during 2011.

During 2011 petitioner husband worked at least 1,294 hours for AC Pavement Striping Co., which provides specialized pavement markings and cost effective pavement preservation practices for all types of roadways.  Its business does not include the development, redevelopment, construction, reconstruction, acquisition, conversion, rental, operation, management, leasing, or brokerage of real property.

**[\*4]**  Petitioners filed timely a joint Form 1040, U.S. Individual Income Tax Return, for tax year 2011.  On their Form 1040 petitioners reported $221,509 of wages and $9,208 of gambling winnings.  Petitioners attached a Schedule A and a Schedule E to their 2011 Form 1040.  Petitioners claimed $60,245 of itemized deductions on their Schedule A and a $10,490 rental real estate loss deduction for the property on their Schedule E.

On their Schedule A petitioners claimed a deduction of $7,229 for charitable contributions by cash or check and a deduction of $9,930 for unreimbursed employee business expenses.[2]  Petitioners' charitable contributions were of two types:  $1,230 for cash or check contributions to miscellaneous charities and $5,999 for expenses related to volunteer work for BGYFL.  Petitioners' unreimbursed employee business expense deduction consisted of $280 for "IPASS", $975 for job seeking, $199 for mobile accessories, $1,248 for mobile communications, $120 for organizational costs, $5,680 for professional costs and dry cleaning, $480 for protective wear, $100 for safety and miscellaneous costs, and $848 for union and professional dues.

---

[2]Petitioners also claimed a deduction of $9,028 for gambling losses. Petitioners concede that they are not entitled to deduct gambling losses on Schedule A.

**[\*5]**   On their Schedule E petitioners reported $15,648 of rental income and $26,138 of expenses.  The expenses consisted of $250 for advertising, $150 for cleaning and maintenance, $970 for insurance, $130 for legal and other professional fees, $300 for management fees, $15,085 for mortgage interest, $3,688 for taxes, $5,015 for depreciation, and $550 for other expenses.

Petitioners hired a certified public accountant (C.P.A.) to prepare their 2011 Form 1040.  Petitioners learned about the C.P.A. through family members.

OPINION

I.   Burden of Proof

Generally, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving that those determinations are erroneous.  Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933).  The taxpayer likewise bears the burden of proving his or her entitlement to deductions allowed by the Code and of substantiating the amounts of claimed deductions.  INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); sec. 1.6001-1(a), Income Tax Regs.  Under section 7491(a), in certain circumstances, the burden of proof may shift from the taxpayer to the Commissioner.  Petitioners have not claimed or shown that they meet the

**[*6]** requirements of section 7491(a) to shift the burden of proof to respondent as to any relevant factual issue.

II.    Section 469

Taxpayers are allowed deductions for certain business and investment expenses under sections 162 and 212.  However, if the taxpayer is an individual, section 469 generally disallows any passive activity loss for the taxable year and treats it as a deduction allocable to the same activity for the next taxable year. Sec. 469(a) and (b).  A passive activity loss is defined as the excess of the aggregate losses from all passive activities for the taxable year over the aggregate income from all passive activities for that year.  Sec. 469(d)(1).  In general a passive activity is any trade or business in which the taxpayer does not materially participate.  Sec. 469(c)(1).  A taxpayer is treated as materially participating in an activity only if his or her involvement in the operations of the activity is regular, continuous, and substantial.  Sec. 469(h)(1).  Rental activity is generally treated as a per se passive activity regardless of whether the taxpayer materially participates. Sec. 469(c)(2).

Section 469(c)(7) provides an exception to the rule that a rental activity is per se passive.  The rental activities of a taxpayer in a real property trade or business who meets certain designated requirements (a real estate professional) are

**[*7]** not subject to the per se rule of section 469(c)(2). Sec. 469(c)(7)(A); see Kosonen v. Commissioner, T.C. Memo. 2000-107, slip op. at 9; sec. 1.469-9(b)(6), (c)(1), Income Tax Regs. Rather, the rental activities of a real estate professional are subject to the material participation requirements of section 469(c)(1). See sec. 1.469-9(e)(1), Income Tax Regs. A taxpayer qualifies as a real estate professional if: (1) more than one-half of the personal services performed in trades and businesses by the taxpayer during the taxable year are performed in real property trades or businesses in which the taxpayer materially participates, and (2) the taxpayer performs more than 750 hours of services during the taxable year in real property trades or businesses in which the taxpayer materially participates. Sec. 469(c)(7)(B)(i) and (ii). In the case of a joint return, the above requirements are satisfied only if either spouse separately satisfies these requirements. Sec. 469(c)(7)(B).

A. Material Participation in a Real Property Trade or Business

Petitioners contend that petitioner husband was a real estate professional. First, we must determine whether petitioner husband participated in a real property trade or business. "Real property trade or business" means "any real property development, redevelopment, construction, reconstruction, acquisition, conversion, rental, operation, management, leasing, or brokerage trade or

[*8] business." Sec. 469(c)(7)(C). Petitioner husband participated in the rental activities of the property. Petitioner husband participated in a rental trade or business.

Second, we must determine whether petitioner husband materially participated in the business of the property. A taxpayer is considered to have materially participated in a particular rental trade or business if one of seven tests set forth in the regulations is met. Sec. 1.469-5T(a), Temporary Income Tax Regs., 53 Fed. Reg. 5725-5726 (Feb. 25, 1988); sec. 1.469-9(b)(5), Income Tax Regs. One test, set forth in section 1.469-5T(a)(2), Temporary Income Tax Regs., supra, is most relevant here: "The individual's participation in the activity for the taxable year constitutes substantially all of the participation in such activity of all individuals (including individuals who are not owners of interests in the activity) for such year." Petitioner husband testified credibly that he was the only one working on the property. Petitioner husband's participation constitutes substantially all of the participation in the property. Petitioner husband materially participated in the business of the property.

B.      Real Estate Professional Test

The first prong of the real estate professional test requires that more than one-half of the personal services performed in a trade and business by petitioner

[*9] husband be performed in a real property trade or business in which he materially participates. During 2011 petitioner husband worked at least 1,294 hours for AC Pavement Striping Co., which does not engage in a real property trade or business. Even if it did, section 469(c)(7)(D)(ii) generally precludes services performed by an employee who is not a 5% owner from being treated as performed in a real property trade or business. As a result petitioners must prove that petitioner husband spent more than 1,294 hours working on the property during 2011.

Petitioners introduced into evidence a calendar that identifies the dates and times that they contend petitioner husband spent working on the property during 2011. They also produced a summary that computes on the basis of the calendar the total number of hours petitioner husband worked. According to petitioners' calendar and summary petitioner husband spent a total of 799 hours working on the property.

Petitioners also introduced a log into evidence. Petitioner husband testified that the hours in this log consist of time spent traveling, performing bookkeeping and maintenance, and researching other properties to purchase and rent out. Petitioner husband admits that the entries indicating that he spent four hours doing bookkeeping are inaccurate.

[*10] Petitioners testified about a second calendar that they contend identifies additional hours that were not included in the first calendar.[3] Petitioner husband's testimony about the second calendar is inconsistent with the first calendar, which was admitted into evidence. According to petitioner husband's testimony, there are more hours identified in the second calendar and they reflect the hours of both the first calendar and the log that were admitted into evidence. From petitioner husband's testimony, it is not clear how he spent his time at the property. The entries in the first calendar and the log are vague. Petitioners' estimates are uncorroborated and do not reliably reflect the hours that petitioner husband spent working on the property. See Bailey v. Commissioner, T.C. Memo. 2001-296, slip op. at 13. We do not find petitioner husband's testimony credible.

Even if we assume that petitioners' first calendar and summary are correct, petitioner husband did not spend more time working on the property than he did as an employee of AC Pavement Striping Co. Petitioner husband does not qualify as a real estate professional under section 469(c)(7). Petitioners did not contend or show that petitioner wife qualified as a real estate professional. Petitioners' rental real estate loss deduction is disallowed pursuant to section 469.

---

[3]This second calendar was not exchanged with respondent pursuant to the standing pretrial order and was not admitted into evidence.

**[\*11]** III.     <u>Unreimbursed Employee Business Expenses</u>

Section 162 permits a taxpayer to deduct ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business.  An ordinary expense is one that commonly or frequently occurs in the taxpayer's business, <u>Deputy v. du Pont</u>, 308 U.S. 488, 495 (1940), and a necessary expense is one that is appropriate and helpful in carrying on the taxpayer's business, <u>Welch v. Helvering</u>, 290 U.S. at 113.  The expense must directly connect with or pertain to the taxpayer's business.  Sec. 1.162-1(a), Income Tax Regs.  A taxpayer may not deduct a personal, living, or family expense unless the Code expressly provides otherwise.  Sec. 262(a).  Miscellaneous itemized deductions, such as the deduction for unreimbursed employee business expenses, are allowed only to the extent that the total of such deductions exceeds 2% of adjusted gross income.  Sec. 67(a).

Deductions are a matter of legislative grace, and a taxpayer must prove his or her entitlement to a deduction.  <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. at 84; <u>New Colonial Ice Co. v. Helvering</u>, 292 U.S. 435, 440 (1934).  To that end, taxpayers are required to substantiate each claimed deduction by maintaining records sufficient to establish the amount of the deduction and to enable the Commissioner to determine the correct tax liability.  Sec. 6001; <u>Higbee v. Commissioner</u>, 116 T.C. 438, 440 (2001).

**[\*12]** Normally, the Court may estimate the amount of a deductible expense if a taxpayer establishes that an expense is deductible but is unable to substantiate the precise amount. See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). This is often referred to as the Cohan rule. See, e.g., Van Dusen v. Commissioner, 136 T.C. 515, 537 n.39 (2011).

Certain expenses specified in section 274, such as vehicle expenses and computer expenses, are subject to strict substantiation rules. Secs. 274(d)(4), 280F(d)(4)(A)(i), (iv). To meet these strict substantiation rules, a taxpayer must substantiate by adequate records or by sufficient evidence corroborating the taxpayer's own statement (1) the amount, (2) the time and place of the travel or use, and (3) the business purpose. Sec. 274(d). To substantiate by adequate records, the taxpayer must provide (1) an account book, a log, or a similar record and (2) documentary evidence, which together are sufficient to establish each element of an expenditure. Sec. 1.274-5T(c)(2)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985). Documentary evidence includes receipts, paid bills, or similar evidence. Sec. 1.274-5(c)(2)(iii), Income Tax Regs. Notably, section 274(d) overrides the Cohan rule. Boyd v. Commissioner, 122 T.C. 305,

[*13] 320 (2004); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985) (flush language).

Petitioners' unreimbursed employee business expense deduction consisted of $280 for "IPASS", $975 for job seeking, $199 for mobile accessories, $1,248 for mobile communications, $120 for organizational costs, $5,680 for professional costs and dry cleaning, $480 for protective wear, $100 for safety and miscellaneous costs, and $848 for union and professional dues. Respondent conceded that petitioners are entitled to deduct the $848 for union and professional dues.

Petitioners' "IPASS" expenses are subject to the strict substantiation rules of section 274. Petitioners failed to provide an account book, a log, a similar record, or other sufficient evidence to substantiate these reported expenses. Petitioners failed to meet the strict substantiation requirements of section 274(d), and we sustain respondent's disallowance of the deductions for these expenses.

Petitioners did not provide any receipts, invoices, or other documents to substantiate the remaining expenses. They likewise did not provide sufficient evidence to permit us to estimate the amounts of the expenses. Petitioners did not prove that some expenses, such as the dry cleaning expenses, were connected with their businesses, and petitioner wife testified that the dry cleaning expenses were

[*14] often personal.  We sustain respondent's disallowance of the deductions for these expenses.

IV.     Charitable Contributions

Section 170(a)(1) allows a deduction for contributions to charitable organizations defined in section 170(c).  Section 170(f)(8) provides substantiation requirements for certain charitable contributions.  Specifically, section 170(f)(8)(A) provides:  "No deduction shall be allowed under subsection (a) for any contribution of $250 or more unless the taxpayer substantiates the contribution by a contemporaneous written acknowledgment of the contribution by the donee organization that meets the requirements of subparagraph (B)."  For donations of cash the donee's written acknowledgment must state the amounts contributed, indicate whether the donee organization provided any goods or services in consideration for the contribution, and provide a description and a good-faith estimate of the value of any goods or services provided by the donee organization.  See sec. 170(f)(8)(B); sec. 1.170A-13(f), Income Tax Regs.  Section 170(f)(17) provides:  "No deduction shall be allowed under subsection (a) for any contribution of a cash, check, or other monetary gift unless the donor maintains as a record of such contribution a bank record or a written communication from the

[*15] donee showing the name of the donee organization, the date of the contribution, and the amount of the contribution."

Certain expenses, such as out-of-pocket transportation expenses and other unreimbursed expenditures, necessarily incurred in performing donated services may constitute deductible contributions if the taxpayer provides (1) a canceled check, (2) a receipt from the donee charitable organization with the name of the donee, the date of contribution, and the amount of the contribution, or (3) other reliable written records showing the name of the donee, the date of contribution, and the amount of the contribution. Secs. 1.170A-1(g), 1.170A-13(a)(1), (f)(10)(i), Income Tax Regs.; see also Van Dusen v. Commissioner, 136 T.C. at 531-532. For contributions of $250 or more the taxpayer must also provide a statement prepared by the donee organization containing (1) a description of the services performed by the taxpayer, (2) a statement of whether the donee organization provided any goods or services in consideration, in whole or in part, for the unreimbursed expenditures, (3) if the donee organization provides any goods or services other than intangible religious benefits, a description and good-faith estimate of the value of those goods or services, and (4) if the donee organization provides any intangible religious benefits, a statement to that effect. Sec. 1.170A-13(f)(10)(ii), Income Tax Regs.

**[\*16]** Petitioners' charitable contributions deduction consists of $1,230 for cash or check contributions to miscellaneous charities and $5,999 for expenses related to volunteer work for BGYFL. Respondent argues that petitioners are not entitled to any deduction because they did not substantiate any of the contributions. Petitioner did not provide receipts, bank records, or documentation for the cash or check contributions to miscellaneous charities. Petitioners likewise did not produce the required documents to substantiate petitioner wife's expenses related to volunteer work for BGYFL. We sustain respondent's disallowance of petitioners' charitable contribution deduction. See Van Dusen v. Commissioner, 136 T.C. at 537.

V.    Penalty

Respondent determined that petitioners are liable for an accuracy-related penalty pursuant to section 6662(a) for the year in issue. Section 6662(a) imposes a 20% penalty on any underpayment attributable to, among other things, negligence or disregard of rules or regulations within the meaning of subsection (b)(1), or any substantial understatement of income tax within the meaning of subsection (b)(2). Only one accuracy-related penalty may be applied with respect to any given portion of an underpayment, even if that portion is subject to the

[*17] penalty on more than one of the grounds set out in subsection (b). Sec. 1.6662-2(c), Income Tax Regs.

The Commissioner bears the burden of production regarding the taxpayer's liability for any penalty. Sec. 7491(c); see also Higbee v. Commissioner, 116 T.C. at 446-447. Once the Commissioner has met this burden, the taxpayer must provide persuasive evidence that the Commissioner's determination was incorrect. See Rule 142(a); Higbee v. Commissioner, 116 T.C. at 447.

Negligence includes any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws, to exercise due care, or to do what a reasonable and prudent person would do under the circumstances. Sec. 6662(c); Neely v. Commissioner, 85 T.C. 934, 947 (1985); sec. 1.6662-3(b)(1), Income Tax Regs. Negligence also includes any failure by a taxpayer to keep adequate books and records or to substantiate items properly. Sec. 1.6662-3(b)(1), Income Tax Regs. Respondent has demonstrated that petitioners failed to keep accurate records with respect to their claimed deductions. Respondent has shown that petitioners acted negligently for tax year 2011.

The accuracy-related penalty does not apply with respect to any portion of an underpayment for which it is shown that the taxpayer had reasonable cause and acted in good faith. Sec. 6664(c)(1). For purposes of section 6664(c) a taxpayer

[*18] may be able to establish reasonable cause and good faith by showing reliance on professional advice. Sec. 1.6664-4(b)(1), Income Tax Regs. To establish good faith and reasonable cause through reliance on professional advice, the taxpayer must show that (1) the adviser was a competent professional who had sufficient expertise to justify reliance; (2) the taxpayer provided necessary and accurate information to the adviser; and (3) the taxpayer actually relied in good faith on the adviser's judgment. Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002).

Petitioners hired a C.P.A. to prepare their 2011 Form 1040. Petitioners did not call the C.P.A. to testify and did not prove that they provided the C.P.A. with necessary and accurate information. Petitioners did not provide reasonable cause for failing to keep adequate books and records in order to substantiate items properly. Petitioners are liable for the accuracy-related penalty.

Any contentions we have not addressed are irrelevant, moot, or meritless.

To reflect the foregoing,

Decision will be entered under

Rule 155.