# United States Tax Court

T.C. Memo. 2022-113

INTAN N. ISMAIL AND MOHD RAZI ABD RAHIM,
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket Nos. 16366-16, 13297-18.          Filed November 29, 2022.

————

Intan N. Ismail and Mohd Razi Abd Rahim, pro sese.

*Britton G. Wilson*, for respondent.


## MEMORANDUM FINDINGS OF FACT AND OPINION

PARIS, *Judge*: The cases at Docket Nos. 16366-16 and 13297-18 are consolidated for trial, briefing, and opinion. Respondent determined deficiencies in petitioners' 2012, 2013, 2014, and 2015 federal income tax of $8,329, $11,733, $8,200, and $2,827, respectively. Respondent also determined accuracy-related penalties under section 6662(a)[1] for 2012, 2013, and 2014. Respondent now concedes that petitioners are not liable for the section 6662(a) accuracy-related penalties determined for the first three tax years.

———————

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*2]   After this concession, the issues for decision are:

1. Whether either petitioner had an ownership interest in RNR Global Resources Sendirian Berhad (RNR) for 2012, 2013, and 2014.

2. Whether RNR was a foreign corporation and not a sole proprietorship for 2012, 2013, and 2014.

3. Whether petitioners adequately substantiated their claimed business expense deductions with respect to vehicles, travel, and meals and entertainment for 2015.

FINDINGS OF FACT

I.   *Background*

Some of the facts have been stipulated and are so found. The Stipulations of Facts, the Supplemental Stipulation of Facts, and the attached Exhibits are incorporated by this reference.[2]

Petitioners Intan N. Ismail and Mohd Razi Abd Rahim resided in Overland Park, Kansas, and Puchong, Malaysia, respectively, when they timely filed the Petitions in these consolidated cases. Petitioners, who are married to each other, filed joint federal income tax returns for 2012 through 2015. Mrs. Ismail has a master's degree and was employed by a Kansas City, Missouri, company during the relevant times in these cases. Dr. Rahim holds a doctorate, and his employment is related to RNR.

In a notice of deficiency dated April 21, 2016, respondent determined deficiencies in petitioners' 2012, 2013, and 2014 federal income tax of $8,329, $11,733, and $8,200, respectively. Respondent also determined accuracy-related penalties under section 6662(a) for those same years. The 2016 notice of deficiency disallowed the loss deductions claimed on petitioners' 2012, 2013, and 2014 Schedules C, Profit or Loss From Business, contending, among other things, that neither petitioner owned the business to which the losses related—RNR—and that the business was a foreign corporation, not a Schedule C sole

---

[2] The Stipulations included translated documents where necessary.

[*3] proprietorship.[3] Respondent now concedes that petitioners are not liable for the section 6662(a) accuracy-related penalties originally determined for 2012 through 2014.

In a notice of deficiency dated April 24, 2018, respondent determined a deficiency in petitioners' 2015 federal income tax of $2,827. The 2018 notice of deficiency did not disallow all of petitioners' claimed Schedule C expense deductions for 2015. Rather, it denied petitioners' deductions for meals and entertainment, travel, and car and truck expenses, contending that petitioners failed to provide sufficient evidence of the reported expenses.

II.    *RNR*

RNR was founded by Dr. Rahim's father, Abd Rahim Bin Yusoff, and Nurmuhammad Bin Ahmad Nordin on March 27, 2008. RNR is organized as a limited liability company (locally known as a Sendirian Berhad) under Malaysian law. All members of the company have limited liability, as stated in RNR's memorandum of association.

Neither petitioner was an owner or director of RNR at the time of its formation. RNR's original board of directors consisted solely of its two founding shareholders, Mr. Yusoff and Mr. Nordin.

By 2013 petitioners had become directors of RNR. The RNR directors' report for the fiscal year ending June 30, 2013, listed petitioners as directors of the company but did not indicate that petitioners owned any shares of RNR. Rather, it stated that Dr. Rahim's father, Mr. Yusoff, owned all 500,000 outstanding shares of RNR. Dr. Rahim, by signed statement, attested to the accuracy of the fiscal 2013 directors' report, which showed he did not hold any RNR shares.

After respondent challenged petitioners' purported ownership of RNR, citing the statement of ownership contained in the fiscal 2013 directors' report, Dr. Rahim provided a revised fiscal 2013 directors' report that listed him as owning 250,000 of the 500,000 outstanding shares of RNR and a directors' report for the previous fiscal year—the period ending June 30, 2012—reflecting an alleged purchase by Dr. Rahim of those shares during that fiscal year.

---

[3] The Schedules C filed for the years at issue in these cases listed Dr. Rahim as the proprietor of an unnamed engineering consulting business with an address in Overland Park.

[*4] Nothing in the "share swap" agreement, dated May 15, 2012, indicates Dr. Rahim received Mr. Nordin's RNR shares before 2015. The translation of the share swap agreement states that Mr. Nordin "would" relinquish his shares to Dr. Rahim at a future date yet to be determined, but in any event, not until RNR obtained certain contracts. RNR did not obtain any contracts or make any sales until 2015.

Finally, there is no evidence that RNR or petitioners complied with the check-the-box regime for entity classification. RNR did not file Form 8832, Entity Classification Election, to elect to be treated as a disregarded entity for federal tax purposes. In addition petitioners did not file Form 8858, Information Return of U.S. Persons With Respect to Foreign Disregarded Entities (FDEs) and Foreign Branches (FBs), to inform respondent of their participation in a foreign disregarded entity. Petitioners failed to report RNR's business address in Malaysia, instead listing the address of the business on Schedules C as Overland Park.

III.  *Schedule C Deductions*

Petitioners claimed and respondent disallowed deductions for certain RNR business expenses as summarized below.

A.  *2012*

Petitioners' 2012 Schedule C reported no gross receipts and $47,422 in RNR business expenses, resulting in a net loss of $47,422. Petitioners' 2012 books and records do not corroborate the claimed Schedule C loss of $47,422. Rather, they support a loss of only $23,328.

B.  *2013*

Petitioners' 2013 Schedule C reported no gross receipts and $61,035 in RNR business expenses, resulting in a net loss of $61,035. Once again, there was a mismatch between the reported Schedule C expenses and petitioners' own books and records. Petitioners reported Schedule C expenses of $61,035, but their books and records substantiated expenses of only $32,570.

C.  *2014*

Petitioners' 2014 Schedule C reported no gross receipts and $49,463 in RNR business expenses, resulting in a net loss of $49,463. Petitioners did not substantiate any of the business expenses reported on their 2014 Schedule C.

[*5]  D.  *2015*

Petitioners' 2015 Schedule C reported $7,577 in gross receipts and $46,253 in business expenses from RNR, resulting in a net loss of $38,676. According to petitioners, the $7,577 in gross receipts reflected payments received on approximately $160,000 in gross sales (buyer payments on these sales were to be made over 18 months).

Respondent allowed $27,424 of the $46,253 in reported RNR business expenses, disallowing only the following expenses totaling $18,829: car and truck expenses of $13,596, travel expenses of $4,183, and meals and entertainment expenses of $1,050.

1.  *Car and Truck Expenses*

Petitioners provided mileage logs, which Dr. Rahim prepared on the basis of estimates rather than odometer readings. With respect to Dr. Rahim's vehicle, actual mileage was recorded by the car dealership during service appointments. Petitioners concede that Mrs. Ismail's mileage log is not a "good" record of her actual business mileage.

Dr. Rahim's 2015 mileage log reports that, from January to June of that year, he drove 150 kilometers six days a week from Puchong to Kuala Lumpur, Malaysia, and 700 kilometers twice a month from his residence to Singapore. His mileage log reflects 31,800 business kilometers (19,705.6 business miles)[4] driven but only 12,450 business miles reported.

Mrs. Ismail's 2015 mileage log reports that, during the same January-to-June period, she drove exactly 33 miles six times a week from Kansas City to Overland Park as well as 40 miles twice a month from Kansas City to Lawrence, Kansas. Her mileage log reflects 5,628 business miles driven but only 4,325 business miles reported.

2.  *Travel, Meals, and Entertainment Expenses*

Petitioners originally reported RNR travel, meals, and entertainment expenses totaling $5,233. Before and during trial, petitioners reported expenses in these categories beyond those reported on their 2015 Schedule C. These additional expenses included expenses

---

[4] The conversion from kilometers to miles was taken from Dr. Rahim's mileage log. We note that 31,800 kilometers is actually 19,759.6 miles, or 54 miles more than stated.

[*6] reported on Schedule C–7, Travel, Meals and Entertainment Expenses, pursuant to respondent's request.

Petitioners now attribute the following expenses to Mrs. Ismail's trips to Singapore in 2015: a trip from May 21 to June 14, 2015 (Trip 1), with meals expenses of $2,500 and lodging expenses of $1,500; a trip from July 11 to July 20, 2015 (Trip 2), with airfare expenses of $1,294.17, meals expenses of $2,500, and lodging expenses of $1,000; a trip from September 4 to September 11, 2015 (Trip 3), with airfare expenses of $1,047.69; and a trip from December 18, 2015, to January 11, 2016 (Trip 4), with airfare expenses of $2,004.99.

a.    *Airfare*

Petitioners provided information to substantiate airfare expenses incurred with respect to Mrs. Ismail's 2015 travel. Mrs. Ismail paid for this travel using a personal credit card and did not seek reimbursement from RNR.

Petitioners provided a receipt establishing that the airfare for Trip 4, Mrs. Ismail's December 2015 trip to Singapore, was $2,004.99. Petitioners did not, however, provide any information about the cost of the flights for Trip 1.

After the first part of the trial, petitioners substantiated expenses related to two additional business trips to Singapore in 2015, Trips 2 and 3. Petitioners provided proof of payment of $1,294.17 for airfare for Trip 2, Mrs. Ismail's July 2015 trip to Singapore. Petitioners also provided proof of payment of $1,047.69 for airfare for Trip 3, Mrs. Ismail's September 2015 trip to Singapore.

Petitioners did not keep a contemporaneous record of Mrs. Ismail's business meetings during her trips to Singapore and Malaysia. The trips, which typically began in Singapore but continued in Malaysia, involved exhibitions, demonstrations, and meetings with vendors. Petitioners met with at least seven different vendors related to the 2015 sales, with Singapore serving as the preferred meeting place for RNR's three international vendors. But petitioners were unable to provide specific, detailed information regarding these meetings, such as the time and place of the meetings, the individuals with whom they met, or the business purpose of specific meetings.

In addition to the exhibitions, demonstrations, and vendor meetings, in 2015, RNR launched a pilot program with the Royal

[*7] Malaysia Police (RMP) that required Mrs. Ismail to be present in country more frequently. After their Singapore business meetings had concluded, petitioners would travel to Kuala Lumpur to meet with the RMP, including the Inspector General of Police. Petitioners did not present corroborating evidence, such as documentation or other information regarding the specific dates or locations of these RMP meetings or the individuals attending them.

Mrs. Ismail had both business and personal reasons for traveling to Singapore and Malaysia. Her personal reasons included that her children, her parents, and Dr. Rahim's parents all were living in Malaysia at the time of the trips. Dr. Rahim's parents live near Malaysia's border with Singapore, and the business trips generally included a one-day visit with Dr. Rahim's family.

b. *Meals and Lodging Expenses*

Petitioners originally claimed a deduction for $1,050 in meals and entertainment expenses. In response to respondent's request, petitioners submitted Schedule C–7, which reported meals and lodging expenses attributable to two of Mrs. Ismail's four 2015 Singapore trips. Meals and lodging for Trip 1 reportedly cost $4,000, of which $1,500 was for lodging and $2,500 was for meals. Meals and lodging for Trip 2 reportedly cost $3,500, of which $1,000 was for lodging and $2,500 was for meals. Petitioners did not substantiate any of the reported lodging or meal expenses.

OPINION

Generally, the Commissioner's determinations in a statutory notice of deficiency are presumed to be correct, and the taxpayer bears the burden of disproving each adjustment by a preponderance of the evidence. Rule 142(a)(1); *Welch v. Helvering*, 290 U.S. 111, 115 (1933).

I. *Petitioners' Purported Ownership Interest in RNR Before 2015*

Respondent contends that petitioners have failed to provide sufficient evidence that Dr. Rahim was an owner of RNR before 2015. We agree with respondent.

Petitioners' documentation does not support a finding that Dr. Rahim was a shareholder of RNR in 2012, 2013, or 2014. Neither petitioner had an interest in RNR at the time of its formation in 2008. By 2013 a contemporaneously prepared directors' report suggests that,

[*8] although petitioners had become directors, they were not shareholders of RNR. The same directors' report also states that Dr. Rahim's father, Mr. Yusoff, and not Dr. Rahim, owned all 500,000 outstanding shares of RNR. Dr. Rahim signed a statement attesting to the accuracy of the directors' report that did not list him as an owner (shareholder).

During the course of the litigation, Dr. Rahim provided a revised directors' report for fiscal 2013 that listed him as owning half the shares of RNR and a directors' report for the previous fiscal year purporting to reflect his purchase of 250,000 shares of RNR. Given Dr. Rahim's easy access to the directors' reports, and ability to influence the contents thereof, and without other evidence to support his purported ownership of RNR, we do not find the revised directors' report to be credible.

Neither have petitioners provided any evidence that Dr. Rahim and Mr. Nordin exercised the share swap agreement before the relinquishment date set forth by the express terms of the contract. Because RNR did not obtain any contracts or make any sales until 2015, the relinquishment date for the share swap was not triggered until approximately three years after Dr. Rahim claims to have received shares from Mr. Nordin. The original fiscal 2013 directors' report confirms this sequence of events by showing that Dr. Rahim held no shares in RNR through June 30, 2013.

Despite the alleged share purchase during fiscal 2012, there is no evidence that Mr. Nordin received any cash or other compensation as consideration for his shares of RNR. Dr. Rahim originally testified that Mr. Nordin was paid approximately $25,000 in 2015. But in later testimony Dr. Rahim was less confident that Mr. Nordin had been paid for his shares.

Moreover, even if Dr. Rahim obtained Mr. Nordin's shares, there is no evidence that petitioners were the sole (100%) owners of RNR and thus entitled to deduct 100% of the claimed losses. Petitioners produced evidence establishing that Dr. Rahim had primary responsibility for the financial management of RNR but not that he was (or they together were) the sole owner of the company. Even the revised fiscal 2013 directors' report, which Dr. Rahim proffered as evidence of his ownership, would not support a finding that Dr. Rahim owned more than 50% of RNR during the years at issue.

**[\*9]** The clear inference from petitioners' failure to provide evidence sufficient to establish their ownership is that they were not owners of RNR during the years in question. Therefore, we find neither petitioner had an ownership interest in RNR during 2012, 2013, or 2014.

II.     *RNR's Entity Status Under the Internal Revenue Code*

Respondent contends that RNR is a foreign corporation, and not a sole proprietorship, under section 7701 for 2012, 2013 and 2014. We agree with respondent.

Even if petitioners have an ownership interest in RNR, they are not allowed to offset their individual income with RNR's losses because RNR is a foreign corporation for federal tax purposes and, as a result, its losses do not flow through to its owners. "Whether an organization is an entity separate from its owners for federal tax purposes is a matter of federal tax law and does not depend on whether the organization is recognized as an entity under local law." Treas. Reg. § 301.7701-1(a)(1). Although an entity's classification under local law is not always recognized, carrying on a business and sharing the profits from it generally creates a separate entity for federal tax purposes. *Id.* subparas. (2) and (3).

"[A]ny entity recognized for federal tax purposes . . . that is not properly classified as a trust . . . or otherwise subject to special treatment" is a "business entity." Treas. Reg. § 301.7701-2(a). A business entity that is not a "per se" corporation, known as an "eligible entity," may elect its classification for federal tax purposes. Treas. Reg. § 301.7701-3(a). Unless an election is made to the contrary, a "foreign eligible entity" in which all members have limited liability is an association (that is, a corporation). *Id.* para. (b)(2)(i)(B).

RNR is organized as a Sendirian Berhad (a private limited liability company) under Malaysian law. Because a Sendirian Berhad is not a "per se" corporation, RNR is a foreign eligible entity permitted to elect its classification for federal tax purposes. *See* Treas. Reg. § 301.7701-2(b)(8)(ii)(3). However, for the tax years at issue, RNR did not file Form 8832. Because RNR did not make an election, it is subject to its default classification under the regulations.

RNR is classified by default as a foreign corporation under the regulations. Treasury Regulation § 301.7701-3(b)(2)(i)(B) provides that a foreign eligible entity that has not elected otherwise and whose members all have limited liability is a corporation. RNR's memorandum

**[\*10]** of association states specifically that all members of RNR have limited liability. Further, petitioners do not contend that the limited liability provided in RNR's organizing documents does not meet the definition of limited liability under Treasury Regulation § 301.7701-3(b)(2)(ii). Therefore, we conclude that RNR is a foreign corporation, and consequently, its losses did not flow through to petitioners for the years at issue.[5]

Accordingly, petitioners' claimed Schedule C deductions for 2012, 2013, and 2014 are denied, and respondent's determination for those same years is sustained.

III. *Disputed Schedule C Deductions for 2015*

Respondent contends petitioners failed to substantiate their claimed deductions for business expenses attributable to "car and truck," "travel," and "meals and entertainment" for 2015. We agree with respondent.

A taxpayer may deduct all ordinary and necessary expenses paid in carrying on a trade or business. § 162(a); *Boyd v. Commissioner*, 122 T.C. 305, 313 (2004). However, whether and to what extent such deductions are allowed is a matter of legislative grace. *INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 84 (1992); *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440 (1934). A taxpayer must prove he or she is entitled to the deductions claimed. Rule 142(a). This requires substantiating expenses underlying the deductions, including maintaining and producing records sufficient to enable the Commissioner to determine the taxpayer's correct tax liability. § 6001; *Hradesky v. Commissioner*, 65 T.C. 87, 89–90 (1975), *aff'd per curiam*, 540 F.2d 821 (5th Cir. 1976).

If a taxpayer establishes that he or she has incurred a trade or business expense contemplated by section 162(a) but is unable to substantiate the precise amount of the expense, the Court generally may estimate the amount of the expense and allow a deduction to that extent. *Cohan v. Commissioner*, 39 F.2d 540, 543–44 (2d Cir. 1930). But to

---

[5] For 2015, respondent has not challenged petitioners' ownership interest in RNR or whether RNR is a type of entity whose expenses may be reported on Schedule C. Rather, respondent contends only that petitioners have failed to meet the strict substantiation requirements of section 274(d) with respect to certain reported Schedule C expenses that would otherwise be allowable as a deduction under section 162.

**[\*11]** estimate a deductible expense, the Court must have a basis upon which an estimate may be made. *Vanicek v. Commissioner*, 85 T.C. 731, 742–43 (1985).

Estimates may not be made under *Cohan* in situations where section 274 imposes strict substantiation requirements. § 274(d); *Sanford v. Commissioner*, 50 T.C. 823, 827–28 (1968), *aff'd per curiam*, 412 F.2d 201 (2d Cir. 1969). Section 274 denies deductions for expenses attributable to vehicles, travel, or meals and entertainment unless the taxpayer substantiates by adequate records or sufficient evidence the amount, time and place, and business purpose of the expenses. § 274(d); Temp. Treas. Reg. § 1.274-5T.

Substantiation by adequate records requires the taxpayer to maintain an account book, a diary, a log, a statement of expense, trip sheets, or a similar record prepared contemporaneously with the expenditure and documentary evidence, such as receipts or bills, of certain expenditures. Treas. Reg. § 1.274-5(c)(2)(iii); Temp. Treas. Reg. § 1.274-5T(c)(2). Substantiation by other sufficient evidence requires the taxpayer to produce corroborative evidence specifically detailing the necessary elements. Temp. Treas. Reg. § 1.274-5T(c)(3).

A.    *Car and Truck Expenses*

Petitioners deducted $13,596 in car and truck expenses, all of which respondent disallowed. We agree with respondent's determination.

With respect to car and truck expenses, a taxpayer may opt to use the standard mileage rate, set annually by the IRS, to substantiate the expense of using a vehicle for business purposes.[6] *See Crawford v. Commissioner*, T.C. Memo. 2014-156, at \*9–10; Treas. Reg. § 1.274-5(j)(2). However, reliance on the standard mileage rate does not relieve the taxpayer of his or her obligation "to substantiate the amount of each business use (i.e., the business mileage), or the time and business purpose of each use." Treas. Reg. § 1.274-5(j)(2).

---

[6] We are not certain from the record whether, for 2015, petitioners intended to take a deduction for car and truck expenses based on the standard mileage rate (because they submitted mileage logs) or actual expense amounts (because the claimed deduction exceeds the standard mileage deduction). Either way, petitioners have not demonstrated they are entitled to deduct expenses attributable to business use of their vehicles.

**[\*12]** In addition, expenses a taxpayer incurs traveling between his or her home and place of business generally constitute commuting expenses, which, as personal expenses, are nondeductible. *Fausner v. Commissioner*, 413 U.S. 838 (1973). "Congress has determined that all taxpayers shall bear the expense of commuting to and from work without receiving a deduction for that expense." *Id.* at 839. Congress' legislative grace extends only so far—and not to one's daily commute.

Here, in support of the reported car and truck expenses, petitioners have provided mileage logs for Dr. Rahim and Mrs. Ismail. The mileage logs were not prepared contemporaneously but rather using estimates. Subsequently prepared mileage records do not have the same high degree of credibility as those made at or near the time the vehicle was used and supported by documentary evidence. Temp. Treas. Reg. § 1.274-5T(c)(1), (2), and (3).

According to respondent, the logical conclusion from the evidence presented is that petitioners attempted to deduct the cost of their daily commutes, which is not allowed under *Fausner*. We agree with respondent. Dr. Rahim's mileage log reports that, during the first half of 2015, he drove 150 kilometers round trip from his residence in Puchong to Kuala Lumpur six days a week. Mrs. Ismail's mileage log reports that, during that same period, she drove 33 miles round trip from her residence in Overland Park to her employer in Kansas City six days a week. Driving the same distance five or six days a week points heavily toward a nondeductible daily commute. This conclusion is bolstered by Dr. Rahim's concession upon cross-examination that Mrs. Ismail's mileage log reflected the drive to her employer's office, not mileage related to RNR.

Respondent further contends that petitioners failed to provide any support for the business purpose of the twice monthly vehicle use from Dr. Rahim's residence to Singapore or from Mrs. Ismail's residence to Lawrence. We once again agree with respondent. Petitioners may have established a business purpose for traveling to Singapore—participating in demonstrations, meeting with vendors—but they have not provided evidence sufficient to establish a business purpose for any single use of Dr. Rahim's vehicle. Without sufficient evidence of business purpose, and considering that Dr. Rahim's parents live near Malaysia's border with Singapore, we conclude that the primary purpose of many of these trips was personal, not business related.

**[\*13]** Without specific, detailed information establishing a business purpose for each of Dr. Rahim's 12 trips to Singapore, we find insufficient evidence to allow petitioners to deduct the car and truck expenses attributable to these trips. To conclude otherwise would require this Court to make a *Cohan* estimate, which section 274 precludes. Similarly, we also find insufficient evidence to establish a business purpose for Mrs. Ismail's twice monthly trips to Lawrence and thus conclude expenses attributable to them are not deductible.

Petitioners have not provided information sufficient to satisfy the substantiation requirements of section 274(d) and the regulations. Accordingly, we will deny petitioners' 2015 vehicle expense deductions and sustain respondent's determination with respect to them.

B.      *Travel, Meals, and Entertainment Expenses*

Respondent contends petitioners are not entitled to deduct their travel, meals, or entertainment expenses because they have not met the strict substantiation requirements of section 274(c)(1) or (d). We agree with respondent.

When a travel expense is incurred abroad, section 274(c)(1) disallows a deduction for any portion of the expense that is not allocable to the taxpayer's trade or business. *DeLima v. Commissioner*, T.C. Memo. 2012-291, at \*25. Further, section 274(m)(3) disallows a deduction "for travel expenses paid or incurred with respect to a spouse . . . accompanying the taxpayer (or an officer or employee of the taxpayer) on business travel" unless the spouse is an employee of the taxpayer, the spouse's travel has a bona fide business purpose, and the spouse would otherwise be able to deduct the expenses.

In addition, "[i]f the trip is primarily personal in nature, the traveling expenses to and from the destination are not deductible even though the taxpayer engages in business activities while at such destination." Treas. Reg. § 1.162-2(b)(1). Determining the primary purpose of a trip requires consideration of all the facts and circumstances, including the ratio of time spent on business and personal activities. *Crawford*, T.C. Memo. 2014-156, at \*12.

1.      *Airfare*

Respondent contends that there is no evidence to support a claim that Mrs. Ismail conducted business on behalf of RNR and therefore her airfare is not deductible as a business expense. We agree with

**[*14]** respondent that Mrs. Ismail's airfare is not deductible as a business expense.

Petitioners deducted $4,183 in travel expenses related to airfare, all of which respondent disallowed. Petitioners substantiated airfare expenses totaling $4,346.85 from three of Mrs. Ismail's four trips—in excess of the claimed deduction. Petitioners did not claim a deduction for airfare from the fourth trip.

Petitioners have not provided sufficient evidence that Mrs. Ismail's trips to Singapore had a business purpose. Although they did not keep a record of Mrs. Ismail's business meetings during these trips, taking into account petitioners' documentary evidence and testimony we believe petitioners occasionally had business in Singapore. However, the existence of occasional business falls short of establishing that any particular trip was taken for business. Therefore, we conclude petitioners lacked a business purpose as required under the strict substantiation requirements of section 274.

Petitioners testified that during Mrs. Ismail's four trips abroad they met with vendors and participated in product demonstrations in Singapore and then continued on to Kuala Lumpur to conduct additional business. We find petitioners' testimony credible, especially considering the approximately $160,000 in gross sales in 2015. But without more specific or detailed information, it is impossible to determine that any one of Mrs. Ismail's four trips had a business purpose.

The lack of a business purpose is even more problematic because Mrs. Ismail had strong personal reasons for traveling to Singapore. Mrs. Ismail testified that her children were residing in Malaysia at the time of her trips and that her business trips also routinely included visits with family, particularly Dr. Rahim's family. Between May 2015 and January 2016 Mrs. Ismail spent almost 70 days abroad on these trips. Without specific, detailed information to contrary, we infer from these facts that the primary purpose for Mrs. Ismail's four trips to Singapore was not business related, but rather to visit her children and family. This provides another basis upon which to disallow these deductions. *See* Treas. Reg. § 1.162-2(b).

Accordingly, we hold petitioners are not entitled to a deduction for Mrs. Ismail's airfare for 2015 and sustain respondent's determination.

**[\*15]**    2.    *Meals and Lodging Expenses*

Respondent contends that petitioners did not substantiate the cost of lodging or meals for either Trip 1 or 2. We agree with respondent. On Schedule C–7 petitioners reported $4,000 in meals and lodging for Trip 1, of which $1,500 was for lodging and $2,500 was for meals, and $3,500 in meals and lodging for Trip 2, of which $1,000 was for lodging and $2,500 was for meals. However, petitioners have offered no additional evidence to corroborate the reported expenses. Accordingly, petitioners did not substantiate the lodging or meal expenses attributable to Trips 1 and 2 and thus are not entitled to deduct any of the expenses under section 274(d).

In conclusion, we hold that petitioners are not entitled to the claimed deductions for vehicle, travel, or meals and entertainment expenses for 2015.

To implement the foregoing,

*Decisions will be entered under Rule 155.*