# United States Tax Court

T.C. Summary Opinion 2026-4

GREGORY A. RODRIGUES,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket No. 7902-24S.                                   Filed June 29, 2026.

————————

Gregory A. Rodrigues, pro se.

*Ana C. Vanderley* and *Michael Skeen*, for respondent.

## SUMMARY OPINION

FRIED, *Chief Special Trial Judge*: This case was heard pursuant to the provisions of section 7463[1] of the Internal Revenue Code in effect when the Petition was filed. Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this Opinion shall not be treated as precedent for any other case.

In a Notice of Deficiency (Notice) dated May 13, 2024, respondent determined a deficiency in petitioner's 2021 federal income tax. After concessions,[2] the issue for decision is whether petitioner is entitled to

————————

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. Monetary amounts are rounded to the nearest whole number.

[2] Petitioner concedes that he is entitled to, at most, a $1,373 deduction for meals and entertainment of the $6,218 claimed on his Schedule C, Profit or Loss From

certain deductions claimed on Schedule C filed with his 2021 federal income tax return.

*Background*

Some of the facts have been stipulated and are so found. When the Petition was filed, petitioner lived in California.

Petitioner received a bachelor of science degree in business administration and finance from California Polytechnic State University and a master of business administration degree from Harvard Business School.

Petitioner served as the chief executive officer (CEO) of Ecologic Brands (Ecologic) from December 2015 until late 2020. By the fall of 2020 petitioner had been replaced as CEO of Ecologic although he remained employed by the company until early January 2021. He earned wages of $575,232 from Ecologic during 2021, and those earnings are reflected on Form W–2, Wage and Tax Statement, issued by Ecologic.

Petitioner is also the founder and president of Western Land Financial, LLC (WLF), a real estate investment company established in 2003. WLF's principal place of business is in San Francisco, California, where it maintained an office in a five-unit condominium building at 23 Midway Street.

During 2021 petitioner owned a 47-acre parcel of land in Anza, California, which he had acquired in 2004. In addition petitioner held a promissory note and deed of trust arising from a loan he made to Pacific Holt Corp. in connection with its acquisition of approximately 2,296 acres of land in Holbrook, Arizona.

Petitioner met Jennifer George when she provided consulting or legal services to Ecologic concerning the company's eligibility for a qualified small business exemption. They later developed a personal relationship that resulted in the birth of their daughter.

Ms. George is an attorney employed by PwC. During the year in issue petitioner and Ms. George jointly owned and resided in a house at

---

Business, attached to his 2021 federal income tax return. Petitioner also concedes that he is not entitled to deductions for "Other" expenses reported on the Schedule C for the California business tax of $348 and annual homeowners association dues of $1,829.

15 San Lorenzo Way in San Francisco with their daughter while maintaining separate bedrooms and office spaces within the residence. They also maintained a joint checking account during the relevant period.

Although real estate is not Ms. George's primary area of practice, she has assisted petitioner with various real estate matters, including advising on transactions and helping prepare related documents. During 2021, however, petitioner and Ms. George did not have a retainer agreement in place governing such services.

Petitioner participated in an annual gathering with a group of approximately ten friends from Harvard Business School, referred to as the "Loveshack Investors." The group was originally organized as a limited liability company shortly after petitioner graduated from business school, although the entity was later dissolved. Despite the dissolution, the members continued to meet each year. Some members of the Loveshack Investors are real estate professionals.

In connection with activities involving the Loveshack Investors, petitioner traveled to West Palm Beach, Florida, from October 14 through 17, 2021, and to San Jose del Cabo, Mexico, from November 11 through 15, 2021. Petitioner also booked a trip to Austin, Texas, relating to plans involving a member of the Loveshack Investors, but the trip was ultimately canceled. In addition petitioner booked, or placed a deposit toward, a trip that he referred to as the "Backroads" trip, which was booked in November 2021 and scheduled to occur in 2022.

Separately, petitioner traveled to Miami, Florida, from July 12 through 19, 2021. Petitioner further traveled to Carmel, California, in March 2021 and again from April 16 through 17, 2021. He also traveled to Healdsburg, California, from October 23 through 24, 2021. Petitioner also made several trips to California's Central Valley during 2021.

Ms. George accompanied petitioner on the trips to Miami and San Jose del Cabo and the trips to Carmel.

Petitioner did not maintain contemporaneous records for travel-related expenses; however, he did maintain receipts and/or credit card and bank records for expenses incurred for travel, including meals and entertainment.

During the examination of petitioner's 2021 return, petitioner prepared a spreadsheet categorizing expenses shown on receipts and

credit card and bank statements for 2021. In general each entry on the spreadsheet includes a date, a vendor, a location of the expenditure, the account from which the expense was paid, an amount, and a business purpose. In preparation for trial petitioner revised the spreadsheet submitted during the examination of his 2021 return.

Petitioner's timely filed 2021 federal income tax return was prepared by a certified public accountant. The $575,232 compensation that petitioner received from Ecologic is reported as wages on the return. Income and deductions attributable to WLF were reported on Schedule C included with his 2021 return. The Schedule C for WLF showed gross receipts of $1,999 and expenses of $52,426, resulting in a loss of $50,427, which was taken into account in the computation of the adjusted gross income on that return. The deductions claimed on the 2021 Schedule C include, as relevant, (1) $16,206 for travel expenses, (2) $6,218 for meals and entertainment, and (3) $12,683 for "Other" expenses.

The Schedule C deduction for "Other" expenses consists of bank charges of $120, dues and subscriptions of $6,587, fees of $168, postage of $336, security of $216, taxes and licenses of $925, and telephone expenses of $4,331.

In the Notice respondent disallowed the above-referenced deductions because respondent "did not receive an answer to [his] request for supporting information." Some of the adjustments made in the Notice are computational and will not be discussed.

*Discussion*

I. *Burden of Proof*

In general, the Commissioner's determinations set forth in a Notice of Deficiency are presumed correct, and the taxpayer bears the burden of proving otherwise. Rule 142(a); *Welch v. Helvering*, 290 U.S. 111, 115 (1933).[3]

II. *Schedule C Business Expenses*

As we have observed in countless opinions, deductions are a matter of legislative grace, and the taxpayer bears the burden of proof

---

[3] Petitioner does not contend, and the record does not establish, that the burden of proof should shift to respondent under section 7491(a)(1).

to establish entitlement to any claimed deduction. Rule 142(a); *INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 84 (1992); *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440 (1934).

A taxpayer claiming a deduction on a federal income tax return must demonstrate that the deduction is allowable pursuant to some statutory provision and must further substantiate that the expense to which the deduction relates has been paid or incurred. § 6001; *Hradesky v. Commissioner*, 65 T.C. 87, 90 (1975), *aff'd per curiam*, 540 F.2d 821 (5th Cir. 1976); *Meneguzzo v. Commissioner*, 43 T.C. 824, 831–32 (1965); Treas. Reg. § 1.6001–1(a).

Taxpayers may deduct ordinary and necessary expenses paid in connection with operating a trade or business. § 162(a); *Boyd v. Commissioner*, 122 T.C. 305, 313 (2004). To be ordinary the expense must be of a common or frequent occurrence in the type of business involved. *Deputy v. du Pont*, 308 U.S. 488, 495 (1940). To be necessary an expense must be appropriate and helpful to the taxpayer's business. *Welch v. Helvering*, 290 U.S. at 113. On the other hand, section 262(a) generally disallows a deduction for personal, living, or family expenses.

As a general rule, if a taxpayer provides sufficient evidence that the taxpayer has incurred a trade or business expense contemplated by section 162(a) but is unable to adequately substantiate the amount, the Court may estimate the amount and allow a deduction to that extent. *Cohan v. Commissioner*, 39 F.2d 540, 543–44 (2d Cir. 1930). However, in order for the Court to estimate the amount of an expense, there must be some basis upon which an estimate may be made. *Vanicek v. Commissioner*, 85 T.C. 731, 742–43 (1985). Otherwise, any allowance would amount to unguided largesse. *Williams v. United States*, 245 F.2d 559, 560 (5th Cir. 1957).

Deductions for expenses attributable to travel ("including meals and lodging while away from home"), entertainment, gifts, and the use of "listed property" (as defined in section 280F(d)(4) and including passenger automobiles), if otherwise allowable, are subject to strict rules of substantiation. *See* § 274(d); *Sanford v. Commissioner*, 50 T.C. 823, 827 (1968), *aff'd per curiam*, 412 F.2d 201 (2d Cir. 1969); Temp. Treas. Reg. § 1.274-5T(a). With respect to deductions for these types of expenses, section 274(d) requires that the taxpayer substantiate either by adequate records or by sufficient evidence corroborating the taxpayer's own statement: (1) the amount of the expense; (2) the time and place the expense was incurred; (3) the business purpose of the

expense; and (4) in the case of an entertainment or gift expense, the business relationship to the taxpayer of each expense incurred.

Substantiation by adequate records requires the taxpayer to maintain an account book, a diary, a log, a statement of expense, trip sheets, or a similar record prepared contemporaneously with the expenditure and documentary evidence (e.g., receipts or bills) of certain expenditures. Treas. Reg. § 1.274-5(c)(2)(iii); Temp. Treas. Reg. § 1.274-5T(c)(2). Substantiation by other sufficient evidence requires the production of corroborative evidence in support of the taxpayer's statement specifically detailing the required elements. Temp. Treas. Reg. § 1.274-5T(c)(3).

With these fundamental principles of federal income taxation in mind, we consider petitioner's claims to the various deductions here in dispute.

### A. *Travel and Meals and Entertainment Expenses*

Petitioner claimed deductions of $16,206 and $6,218[4] on the Schedule C for WLF for travel and meals and entertainment expenses, respectively. According to petitioner, those amounts represent expenses paid for WLF-related travel to meet with investors and real estate professionals. Travel expenses reported on the Schedule C include FasTrak tolls, lodging, airfare, transportation, and meals.

Petitioner asserts that his travel to West Palm Beach, Miami, San Jose del Cabo, and Austin—the latter of which was ultimately canceled—was undertaken in connection with efforts to sell the Anza and Holbrook properties. Petitioner further contends that his trips to Carmel and Healdsburg were undertaken to meet with real estate professionals regarding potential acquisitions of short-term rental properties, and that his trips to the Central Valley related to real estate lending and investment opportunities.

In support of the claimed deductions, petitioner submitted: (1) invoices and receipts; (2) credit card and bank statements; (3) a spreadsheet prepared during the examination of his 2021 return categorizing expenses reflected in the receipts and financial statements; (4) a revised spreadsheet prepared in anticipation of trial; and (5) a draft

---

[4] Petitioner now asserts that he is entitled to a deduction for meals and entertainment expenses of $1,373, instead of the $6,218 he had reported on his tax return.

"Concept Plan" for the Anza property, dated June 28, 2005, which petitioner contends he shared with certain members of the Loveshack Investors. Petitioner also introduced two emails sent to separate members of the Loveshack Investors—one dated September 6, 2024, and the other dated September 10, 2024—each stating: "I am following up with you regarding the two properties we discussed in 2021 during our Loveshack trip. See attached. Do you have any interest?"

According to respondent, petitioner has failed to establish that the expenses were paid or, if paid, were business related.

Although petitioner produced documentation sufficient to establish that many of the expenses were in fact paid, the Court does not find petitioner's spreadsheets reliable or his testimony credible with respect to the asserted business purposes of the expenditures. The record instead suggests that the travel was predominantly personal. The trips included travel with petitioner's business school friends and with Ms. George, with whom petitioner shares a residence and a child. Although petitioner maintains that Ms. George accompanied him in her capacity as his attorney, the record contains no documentary evidence of an attorney-client relationship, and under the circumstances, we reject that assertion.

Likewise, petitioner's position that the annual Loveshack Investors trips were business oriented is not supported by the record, notwithstanding that some members of the group work in real-estate-related fields. The September 2024 emails are of limited probative value because they were not contemporaneous with the 2021 travel at issue and were generated after the examination of petitioner's 2021 return had commenced. Similarly, the draft "Concept Plan" for the Anza property, dated June 28, 2005, predates the 2021 travel by approximately 16 years and does little to establish that the trips at issue were undertaken for business purposes. Petitioner's testimony was otherwise undermined by inconsistencies with the documentary evidence. Indeed, petitioner acknowledged at trial that he "made some mistakes on some of the travel and meal expenses."

The absence of contemporaneous logs or records identifying the business purpose of the trips, combined with petitioner's inconsistent testimony and the numerous instances in which the purported business travel appeared intertwined with personal recreation, leads us to conclude that petitioner has failed to satisfy the business purpose requirement of section 274. Accordingly, we sustain respondent's

disallowance of the claimed travel and meals and entertainment expense deductions.

### B. *Other Expenses*

Petitioner claimed a $12,683 deduction for "Other" expenses on the Schedule C for WLF consisting of (1) $120 for bank charges; (2) $6,587 for dues and subscriptions;[5] (3) $168 for fees; (4) $336 for postage; (5) $216 for security; (6) $925 for taxes and licenses;[6] and (7) $4,331 for telephone expenses.

According to petitioner, those amounts represent WLF-related business expenses. According to respondent, petitioner has failed to establish that the expenses were paid or, if paid, were business related.

#### 1. *Bank Charges*

Petitioner contends that he is entitled to a $120 deduction for bank charges. In support of his bank charges deduction petitioner presented bank account statements showing that he paid wire transfer fees of $120. Petitioner credibly testified that the bank charges are attributable to wire transfer fees incurred in connection with loans made to real estate professionals for the acquisition of real property. Accordingly, we hold that petitioner is entitled to a $120 deduction for bank charges.

#### 2. *Dues and Subscriptions*

Petitioner contends that he is entitled to a $4,758 deduction for dues and subscriptions, including expenses for homeowner association (HOA) fees, a Wall Street Journal subscription, and a Ring camera yearly subscription fee.

In support of his claimed deductions for dues and subscriptions, petitioner introduced financial records reflecting payment of the expenses at issue. The record establishes that the HOA fees related to WLF's office at 23 Midway Street. The record further establishes that

---

[5] Petitioner now asserts that he is entitled to a deduction for dues and subscriptions of $4,758, after taking into account his concession that he is not entitled to a deduction for annual homeowner association dues of $1,829.

[6] Petitioner now asserts that he is entitled to a deduction for taxes and licenses of $577, after taking into account his concession that he is not entitled to a deduction for the California business tax of $348.

the Wall Street Journal subscription constituted an ordinary and necessary expense of WLF because, as petitioner testified, he monitored interest rates in connection with setting rates on mortgages provided through WLF. With respect to the Ring subscription, petitioner credibly testified that it was maintained to provide security for two of his properties. Accordingly, we hold that petitioner is entitled to a $4,758 deduction for dues and subscriptions.

### 3.     *Fees and Taxes and Licenses*

Petitioner claimed deductions of $168 for fees and $925 for taxes and licenses. According to petitioner, those amounts represent city and county of San Francisco "business registration renewal fees," as well as California business taxes.

A review of petitioner's spreadsheets shows that the $168 deduction for city and county of San Francisco fees was also included in the amount claimed for taxes and licenses. Accordingly, petitioner is not entitled to a separate $168 deduction for fees. Nevertheless, petitioner substantiated expenses for taxes and licenses of $577 and is therefore entitled to a deduction in that amount.

### 4.     *Postage*

Petitioner claimed a $336 deduction for postage expenses. In support of that deduction petitioner produced financial records establishing that he incurred and paid $336 of postage expenses in connection with the shipping and notarization of real estate documents. On the basis of that evidence, we conclude that petitioner is entitled to a $336 deduction for postage expenses.

### 5.     *Security*

Petitioner claimed a $216 deduction for security expenses. In support of that deduction petitioner produced financial records reflecting a $216 payment to a company identified as Tactical Traps. Although his spreadsheet characterized the expense as relating to document security, petitioner offered no testimony or other corroborating evidence establishing the business purpose of the expenditure. Accordingly, petitioner is not entitled to a deduction for security expenses.

6. *Telephone*

Petitioner claimed a $4,331 deduction for telephone expenses attributable to internet, cable, and cellular telephone services. Petitioner testified that those expenses related to his cell phone (he had only one), internet services provided by Comcast, and an email account associated with a domain name.

The record reflects that petitioner's Comcast subscription included cable television services, consisting of an HD Preferred XF package, Showtime, HBO Max, broadcast television fees, regional sports fees, and DVR services. Although the documentary evidence substantiates that petitioner paid the reported expenses, many of those expenditures were inherently personal. *See* § 262(a). Moreover, petitioner failed to establish what portion, if any, of the expenses was properly allocable to WLF as ordinary and necessary business expenses, and he provided no reasonable basis upon which the Court could make an estimate under the *Cohan* rule. Accordingly, we sustain respondent's disallowance of the claimed telephone expense deduction.

To reflect the foregoing,

*Decision will be entered under Rule 155.*